## CONNECTICUT NATIONAL BANK *v.* NORMAN J. VOOG
## (15056)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued January 11—decision released May 30, 1995

*Paul R. Kraus*, for the appellant (defendant).

*Darrell K. Fennell*, with whom, on the brief, was *Philip M. Chiappone*, for the appellee (plaintiff).

KATZ, J. The dispositive issue before the court is whether the trial court abused its discretion in concluding that the defendant's proposed defenses and counterclaim were unrelated to the plaintiff's complaint and could be raised in a separate cause of action and, consequently, in sustaining the plaintiff's objection to the defendant's request for leave to amend his response to include those defenses and the counterclaim. We conclude that it did abuse its discretion, and therefore reverse the trial court's subsequent rendering of judgment in favor of the plaintiff.

The following facts are undisputed. The plaintiff, Connecticut National Bank (CNB), commenced this action by an application for a prejudgment remedy,[1] dated August 8, 1990, to secure, by attachment of real

[1] See General Statutes § 52-278e et seq.

property, any judgment it might obtain against the defendant, Norman Voog, arising from his execution of two promissory notes. The prejudgment remedy was granted by agreement on September 10, 1990. On April 17, 1991, pursuant to Practice § Book 251,[2] this case was dismissed by the trial court for failure to prosecute with reasonable diligence because CNB had failed to return a signed writ of summons and complaint to the court. See General Statutes § 52-48. The court subsequently opened this judgment of dismissal, but the case again was dismissed for failure to prosecute with due diligence.

The judgment again was reopened by the court on June 27, 1991, and Voog filed his answer on October 22, 1991. He denied the allegations in CNB's complaint that he had defaulted under the terms and conditions of the two notes, and he asserted the special defense that CNB employees had misrepresented the financial viability of limited partnerships with Colonial Realty Company, Inc. (Colonial), to induce him to borrow the money from CNB and to permit him to purchase some of those limited partnership interests. See Practice Book § 164.

CNB filed a motion to strike the special defense on the ground that there is no duty for a lender to inves-

---

[2] Practice Book § 251 provides: "DISMISSAL FOR LACK OF DILIGENCE

"If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests.

"If a case is printed on a dormancy calendar pursuant to the dormancy program administered under the direction of the chief court administrator, and a motion for default for failure to plead is filed pursuant to Sec. 128, only those papers which close the pleadings by joining issues, or raise a special defense, may be filed by any party, unless the court otherwise orders."

tigate a borrower's motives or financial status. See Practice Book § 152 (5). In Voog's absence, on December 24, 1991, the motion was granted.[3] Immediately thereafter, Voog filed a motion to amend his response to which CNB objected. The trial court, *Arena, J.*, heard argument and entered a scheduling order allowing Voog to file an amended answer and any special defenses on or before January 31, 1992, and ordering CNB to file any objection thereto by February 7, 1992.[4]

---

[3] Voog's counsel had previously been affiliated with another firm and, on December 16, 1991, had filed his individual appearance and a motion for extension of time through December 26, 1991, in order to respond to CNB's motion to strike. CNB does not contest Voog's allegation that his counsel had not received a copy of the December 24, 1991 short calendar upon which the motion to strike appeared. The trial court granted the motion to strike without considering Voog's motion for an extension of time.

[4] The order by the court read as follows:

"CONN. NATIONAL BANK VS.
VOOG, NORMAN J.                                    CV-91-0059201-S

JANUARY 24, 1992 COUNSEL & PARTIES OF RECORD LAW SHORT CALENDAR REPORT, JANUARY 21, 1992 MOTION TO WITHDRAW APPEARANCE, = 127.00, ORDER OF THE COURT, RE: SCHEDULING ORDER = 127.00 – GRANTED. ORDER A SUBSTITUTED &/OR AMENDED ANSWER & SPECIAL DEFENSES IS TO BE FILED ON OR BEFORE 1-31-92, WITH ANY REVISION &/OR OBJECTION THERETO TO BE FILED BY 2-7-92. IF SAID SUBSTITUTED &/OR [AMENDED] ANSWER AND SPECIAL DEFENSES IS NOT FILED ON OR BEFORE 1-31-92, THEN PLAINTIFF MAY CLAIM THIS MATTER TO THE TRIAL LIST. (THE PRESENT AMENDED ANSWERS & SPECIAL DEFENSE IS WITHDRAWN BY THE DEFENDANT.)

BY THE COURT
/ARENA, J./
1-22-92                                               TAC MOORE

                              SLAVITT CONNERY & VARDAM
                              618 WEST AVENUE
                              P.O. BOX 2129
                              NORWALK, CT 06852

SUPERIOR COURT
DEKOVEN DRIVE
MIDDLETOWN, CONNECTICUT 06457
DATED JAN. 24, 1992"

On January 29, 1992, Voog filed a request for leave to amend his answer and special defenses, and attached thereto his amended answer, in which he set forth a general denial, four special defenses and a three count counterclaim. Voog claimed in his special defenses that: (1) CNB had conspired with employees of Colonial to offer financing in order to sell investments in a partnership that it knew to be valueless; (2) the notes that are the subject of the complaint were given without consideration; (3) CNB violated the Connecticut Unfair Trade Practices Act (CUTPA);[5] and (4) CNB is equitably estopped from enforcing the notes that are the subject of this action.[6] On the basis of the conduct

---

[5] General Statutes § 42-110a et seq.

[6] Specifically, Voog made the following allegations:

"As and For A First Special Defense

"1. Connecticut National Bank, through its officers and agents, entered into a conspiracy with a certain Kenneth Zak and other officers or employees of Colonial Realty, Inc. to offer financing to purchase interests in limited partnerships which they knew to be valueless and to solicit people to purchase these interests.

"2. Upon information and belief, officers or agents of Connecticut National Bank received unauthorized commissions for placement of financing to purchase these limited partnership interests.

"3. Mr. Voog was solicited by Mr. Zak, officers or agents of Connecticut National Bank and officers or employees of Colonial Realty, Inc. to purchase these limited partnership interests and the notes on which plaintiff seeks recovery in this action were used to finance the purchase of these limited partnership interests.

"4. Connecticut National Bank, acting through its officers or agents, and acting in furtherance of the conspiracy set forth in Paragraph 1 of defendant's First Special Defense, made misrepresentations to Mr. Voog (i) overstating the assets of the limited partnership; (ii) understating the liabilities of the limited partnership; (iii) understating the risk of purchasing an interest in this limited partnership; (iv) inaccurately describing the nature of the limited partnership; and (v) misstating the use to which the funds would be put.

"5. Connecticut National Bank knew or should have known, with reasonable diligence, of the activities of its officers or agents in connection with the offering of financing to purchase these limited partnership interests.

"6. These representations were untrue and were known to be untrue at the time they were made.

alleged in his first special defense, Voog claimed that he had suffered damages as a result of CNB's fraudulent misrepresentations, and that CNB's activities constituted a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO)[7] and CUTPA.[8]

"7. These representations were made for the purpose of inducing Mr. Voog to endorse the notes which are the subject of this action.

"8. Mr. Voog relied to his detriment on these misrepresentations made by Connecticut National Bank by signing the notes which are the subject of this action.

"9. By reason of his reliance on the misrepresentations of Connecticut National Bank, Mr. Voog has suffered damages.

"As and For A Second Special Defense

"1. Because the limited partnership interests purchased by Mr. Voog had no value, the notes which are the subject of this action were given without consideration.

"As and For A Third Special Defense

"1. The activities of Connecticut National Bank, as described in Mr. Voog's First Special Defense, constitute a violation of the Connecticut Unfair Trade Practices Act ('CUTPA'), Conn. Gen. Stat. sections 42-110a et seq.

"As and For A Fourth Special Defense

"1. By reason of the activities of Connecticut National Bank, as outlined in Mr. Voog's First Special Defense, Connecticut National Bank is equitably estopped from enforcing the notes which are the subject of this action."

[7] 18 U.S.C. § 1961 et seq. (1988).

[8] Voog made the following claims in his counterclaim:

"COUNTERCLAIM

"First Count

"1. Paragraphs 1 through 9 of defendant's First Special Defense are incorporated by reference with the same force and effect as if fully set forth herein.

"2. As a consequence of the actions of Connecticut National Bank, defendant has suffered damages.

"Second Count

"1. Paragraphs 1 through 9 of Mr. Voog's First Special Defense are incorporated by reference with the same force and effect as if fully set forth herein.

"2. The solicitation of Mr. Voog to purchase interests in these limited partnerships took place in interstate commerce.

"3. Mr. Voog was solicited to purchase these limited partnership inter-

CNB objected to the amendment, primarily on the grounds that the allegations were prejudicial and would unnecessarily delay the proceedings. On March 12, 1992, the trial court, *Austin, J.*, sustained CNB's objections, not on the grounds CNB had asserted, but on the basis that "[t]he issues attempted to be raised by [Voog] may be raised in a separate cause of action, unrelated to this case, as they are not proper in this cause of action."[9] On November 6, 1992, Voog filed a motion to stay the case pending a decision by the court regarding his request to transfer the case into the

---

ests through the use of the mail and through the use of wire transmissions.

"4. The activities of Connecticut National Bank, as described above, constitute a violation of the Racketeer Influenced and Corrupt Organizations Act.

"Third Count

"1. The activities of Connecticut National Bank, as described in Mr. Voog's First Special Defense, constitute a violation of the Connecticut Unfair Trade Practices Act ('CUTPA'), Conn. Gen. Stat. sections 42-110a et seq."

[9] The order by the trial court read as follows:

"CONN. NATIONAL BANK VS.
VOOG, NORMAN J.                                                    CV-91-0059201-S

MARCH 13, 1992 COUNSEL & PARTIES OF RECORD LAW SHORT CALENDAR REPORT, MARCH 9, 1992 OBJECTION TO REQUEST TO AMEND, = 133.00

SUSTAINED, AS TO ALL OBJECTIONS. THE ISSUES ATTEMPTED TO BE RAISED BY THE DEFENDANT MAY BE RAISED IN A SEPARATE CAUSE OF ACTION, UNRELATED TO THIS CASE, AS THEY ARE NOT PROPER IN THIS CAUSE OF ACTION.

BY THE COURT
/AUSTIN, J./
3-12-92
TAC MOORE

> PAUL RAYMOND KRAUS
> 173 CHATHAM STREET
> NEW HAVEN, CT 06513

SUPERIOR COURT
DEKOVEN DRIVE
MIDDLETOWN, CONNECTICUT 06457

DATED MAR. 13, 1992"

Colonial related litigation program.[10] The court denied both requests.

Voog twice moved the trial court to reconsider its earlier ruling sustaining CNB's objection to his request for leave to amend. In these motions for reconsideration, Voog directed Judge Austin's attention to the case of *Connecticut National Bank* v. *Gerace*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 90-00442832 (October 15, 1992), which, like his case, involved collection of moneys that had been borrowed from CNB for the purchase of shares in the Great Rings Estate Limited Partnership in Newtown (Great Rings), one of the limited partnerships promoted by Colonial. Voog had testified in *Gerace* concerning the circumstances surrounding his purchase of an interest in Great Rings and the financing with CNB that enabled his purchase. As special defenses, Gerace had been permitted to assert violations of the Connecticut Uniform Securities Act (CUSA), General Statutes § 42a-3-407[11] and CUTPA.

---

[10] The Colonial related litigation program was a case management plan established by the Judicial Branch for civil matters relating to Colonial litigation.

[11] Specifically, Gerace had alleged that CNB had violated General Statutes (Rev. to 1993) §§ 36-472, 36-473 and 36-474.

General Statutes (Rev. to 1993) § 36-472 provides: "PROHIBITED ACTIVITIES RE THE OFFER, SALE OR PURCHASE OF ANY SECURITY. No person shall, in connection with the offer, sale or purchase of any security, directly or indirectly: (1) Employ any device, scheme or artifice to defraud; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

General Statutes (Rev. to 1993) § 36-473 provides in pertinent part: "PROHIBITED ACTIVITIES OF INVESTMENT ADVISERS AND PERSONS WHO SOLICIT ADVISORY BUSINESS ON BEHALF OF INVESTMENT ADVISERS. (a) No person who directly or indirectly receives compensation or other remuneration for advising another person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise, shall:

Gerace also had been permitted to assert that CNB had made fraudulent misrepresentations. In two of the

(1) Employ any device, scheme or artifice to defraud the other person; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon such other person.

\* \* \*

"(f) No person who directly or indirectly receives compensation or other remuneration for soliciting advisory business on behalf of a person subject to the prohibition contained in subsection (a) of this section shall, in connection with such solicitation: (1) Employ any device, scheme or artifice to defraud; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit."

General Statutes (Rev. to 1993) § 36-474 provides in relevant part: "BROKER-DEALER, AGENT OR INVESTMENT ADVISER REQUIRED TO REGISTER. NOTICE RE TERMINATION OF BUSINESS. (a) No person shall transact business in this state as a broker-dealer unless he is registered under this chapter. No individual shall transact business as an agent in this state unless he is registered as an agent of the broker-dealer or issuer whom he represents in transacting such business.

"(b) No broker-dealer or issuer shall employ an agent unless such agent is registered under this chapter. The registration of an agent is not effective during any period when he is not associated with a particular broker-dealer registered under this chapter or a particular issuer. When an agent begins or terminates a connection with a broker-dealer or issuer, or begins or terminates those activities which make him an agent, both the agent and the broker-dealer or issuer shall promptly notify the commissioner.

"(c) No person shall transact business as an investment adviser, within or from this state, unless registered as such by the commissioner as provided in this chapter. No individual shall transact business as an investment adviser agent, within or from this state, unless he is registered as an investment adviser agent of the investment adviser for whom he acts in transacting such business. No investment adviser shall engage an investment adviser agent unless such investment adviser agent is registered under this chapter. The registration of an investment adviser agent is not effective during any period when he is not associated with a particular investment adviser registered under this chapter. When an investment adviser agent begins or terminates a connection with an investment adviser, both the investment adviser agent and the investment adviser shall promptly notify the commissioner. If an investment adviser or investment adviser

three counts in his counterclaim, finally, Gerace had been permitted to allege violations of CUSA and CUTPA. Despite the similarity between *Gerace* and Voog's case, Judge Austin denied Voog's motions to reargue without opinion.

CNB then moved for summary judgment. Voog attached copies of the pleadings from *Gerace* to his memorandum of law in opposition to the motion, claiming that, because of the jury verdict against CNB in that case,[12] CNB should be collaterally estopped from establishing the validity of the notes in this case. The trial court, *Higgins, J.*, recognized that "the doctrine of collateral estoppel would bar the relitigation of issues decided in the other collection case even though [Voog] in the case presently before the court was not a party to that case. However, the issues decided in the earlier case are not being relitigated here. . . . *Scalzo* v. *Danbury*, [224 Conn. 124, 128, 617 A.2d 440 (1992)] . . . .

agent provides such notice, such investment adviser or investment adviser agent shall not be liable for the failure of the other to give such notice.

"(d) No broker-dealer or investment adviser shall transact business from any place of business located within this state unless that place of business is registered as a branch office with the commissioner pursuant to this subsection. . . ."

General Statutes § 42a-3-407 provides: "ALTERATION. (a) 'Alteration' means (i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.

"(b) Except as provided in subsection (c), an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms.

"(c) A payor bank or drawee paying a fraudulently altered instrument or a person taking it for value, in good faith and without notice of the alteration, may enforce rights with respect to the instrument (i) according to its original terms, or (ii) in the case of an incomplete instrument altered by unauthorized completion, according to its terms as completed."

[12] The jury found for the defendant, Gerace, on both counts of the complaint and on all three counts of his counterclaim.

[In that earlier case] the securities act violations and CUTPA violation, were properly before the jury. In this case, however, those claims were excluded when the court granted CNB's motion to strike [Voog's] special defense, sustained CNB's objection to [Voog's] request for leave to amend his answer, and denied his motion for reconsideration." Because there was no material issue of fact regarding the existence of the notes and Voog's nonpayment, Judge Higgins granted the motion for summary judgment.

Thereafter, Voog filed a notice of defense, as provided by Practice Book § 367,[13] to contest liability. Because Voog properly, although unsuccessfully, had already advanced these arguments in opposition to the motion for summary judgment, the trial court, *J. Walsh, J.*, determined that the plain language of § 367 precluded the notice of defense. Voog also asserted that CNB should be collaterally estopped in this case because of the trial court's decision in *Connecticut National Bank* v. *Giacomi*, Superior Court, judicial district of Waterbury, Docket No. 91-0105860 (September 28, 1993). Because the *"Giacomi* decision involved allegations of fraudulent misrepresentations," the issues in the two cases again were not identical, and Judge Walsh denied the motion. Thereafter, CNB filed an affidavit of debt upon which the court, *Gaffney, J.*, rendered judgment in the amount of $139,449.33, principal and interest, together with attorney's fees of $1307.45.

---

[13] Practice Book § 367 provides: "——NOTICE OF DEFENSES

"In any hearing in damages upon default suffered or after a denial of a motion to strike, the defendant shall not be permitted to offer evidence to contradict any allegations in the plaintiff's complaint, except such as relate to the amount of damages, unless he has given notice to the plaintiff of his intention to contradict such allegations and of the subject matter which he intends to contradict, nor shall the defendant be permitted to deny the right of the plaintiff to maintain such action, nor shall he be permitted to prove any matter of defense, unless he has given written notice to the plaintiff of his intention to deny such right or to prove such matter of defense."

Voog appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Voog raises essentially four issues on appeal. Voog claims that the trial court abused its discretion: (1) in sustaining CNB's objection to his request for leave to amend; (2) in failing to disqualify CNB's counsel;[14] (3) in denying placement of this case in the Colonial related litigation program; and (4) in denying his request for leave to give notice of his intention to defend against issues of liability pursuant to Practice Book § 367. Because we agree with Voog that the trial court improperly denied him permission to amend his response to the complaint, which effectively required the trial court subsequently to grant CNB's motion for summary judgment rather than permit Voog to assert collateral estoppel and prevent CNB from collecting on the notes, we reverse the judgment and remand the case for further proceedings.[15]

The rules of practice state the guidelines to be used by the trial court in deciding whether to allow an amendment to a pleading. Practice Book § 176 provides in pertinent part: "Except as provided in Sec. 182, a

[14] Early in the litigation, Voog moved the court to disqualify the law firm of Pullman and Comley from representing CNB in this case because it had prepared the offering statement for Great Rings upon which Voog allegedly had relied in deciding to borrow money from CNB. Voog claims that the firm's continued representation of CNB violated rule 1.7 (b) of the Rules of Professional Conduct, which provides in pertinent part: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) The lawyer reasonably believes the representation will not be adversely affected; and (2) The client consents after consultation. . . ."

[15] We therefore do not decide the scope of Practice Book § 367, and offer no opinion as to whether on remand the case should be joined with the Colonial related litigation program. We also note that because Pullman and Comley is no longer representing CNB, the issue of whether the firm should have been disqualified is moot. *Sadlowski* v. *Manchester*, 206 Conn. 579, 583–84, 538 A.2d 1052 (1988).

party may amend his pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner: (a) By order of court; or (b) By written consent of the adverse party; or (c) By filing a request for leave to file such amendment, with the amendment appended . . . . If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall . . . be filed with the clerk within the time specified above and placed upon the next short calendar list.

"The court may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial. If the amendment occasions delay in the trial or inconvenience to the other party, the court may award costs in its discretion in his favor. For the purposes of this rule, a substituted pleading shall be considered an amendment."

" 'While our courts have been liberal in permitting amendments; *Johnson* v. *Toscano*, 144 Conn. 582, 587, 136 A.2d 341 (1957); this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. *Cummings* v. *General Motors Corporation*, 146 Conn. 443, 449–50, 151 A.2d 884 (1959). The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. *Freccia* v. *Martin*, 163 Conn. 160, 164, 302 A.2d 280 (1972).' *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 302–303, 460 A.2d 448 (1983). . . . It is within the discretion of the trial court to grant or deny an amendment, and a decision to deny an amend-

ment during a trial will not be disturbed unless there is a clear abuse of that discretion. *Lawson* v. *Godfried*, 181 Conn. 214, 216, 435 A.2d 15 (1980)." *Farrell* v. *St. Vincent's Hospital*, 203 Conn. 554, 561–62, 525 A.2d 954 (1987).

The undisputed facts of this case demonstrate that the trial court, *Arena, J.*, had set a scheduling order setting forth dates by which time Voog was required to file any requests to amend with the accompanying amendments, and by which time CNB was required to respond thereto. Both parties complied with that order and the trial court, *Austin, J.*, acting on the request to amend, expressed no concern about the timeliness of the pleadings or the potential delay that Voog's defenses and counterclaim might cause. Rather, the trial court denied the request solely because it concluded that the pleadings were unrelated to the complaint and, therefore, more properly the subject of some future separate cause of action. We disagree with that determination.

The special defenses Voog sought to raise can be distilled to the following assertions: (1) CNB conspired with Colonial to induce him through fraudulent misrepresentations to purchase, with funds borrowed from CNB, an interest in a valueless partnership; (2) there was no consideration for the notes he signed; (3) CNB's actions constituted a violation of CUTPA; and (4) CNB should be equitably estopped from collecting on the notes. His counterclaim set forth three claims: one based on fraudulent misrepresentation, and two based on alleged violations of CUTPA and RICO.

We begin with the common law special defenses that Voog argues relate directly to the issue of whether CNB is legally entitled to collect on the notes. The complaint sets forth two counts, each alleging a breach of contract by the defendant for nonpayment of money due

and owing under the terms and conditions of the two agreements in issue. To be enforceable, a contract must be supported by valuable consideration. *Gruber* v. *Klein*, 102 Conn. 34, 36–37, 127 A. 907 (1925). "The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." *State National Bank* v. *Dick*, 164 Conn. 523, 529, 325 A.2d 235 (1973). Therefore, Voog's allegation that the notes in issue were not supported by requisite consideration directly undermines CNB's ability to enforce them.

Voog also asserted the special defense of equitable estoppel. "In its traditional form the doctrine of equitable estoppel states that a party (1) who is guilty of a misrepresentation of existing fact including concealment, (2) upon which the other party justifiably relies, (3) to his injury, is estopped from denying his utterances or acts to the detriment of the other party." J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 11-29 (b), p. 489. "In considering the law of estoppel in Connecticut, we have stated: ' "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. *Bozzi* v. *Bozzi*, 177 Conn. 232, 242, 413 A.2d 834 (1979); *Dupuis* v. *Submarine Base Credit Union, Inc.*, [170 Conn. 344, 353, 365 A.2d 1093 (1976)]; *Pet Car Products, Inc.* v. *Barnett*, 150 Conn. 42, 53–54, 184 A.2d 797 (1962)." *Zoning Commission* v. *Lescynski*, [188 Conn. 724, 731, 453 A.2d 1144 (1982)].' *Kimberly-Clark Corporation* v. *Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987)." *O'Sullivan* v. *Bergenty*, 214 Conn. 641, 648, 573 A.2d

729 (1990). "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." *Spear-Newman, Inc.* v. *Modern Floors Corp.*, 149 Conn. 88, 91–92, 175 A.2d 565 (1961). This defense, upon which the defendant bears the burden of proof, also directly relates to CNB's ability to prevail under the terms of the notes and, therefore, had been pleaded properly by Voog.

Voog also claimed as a special defense that CNB had conspired with employees of Colonial to misrepresent the value of the limited partnerships and to solicit investors based on these misrepresentations. In articulating this defense, Voog contended that "[t]hese representations were made for the purpose of inducing [him] to endorse the notes which are the subject of this action," and he thereby ostensibly claimed that he had been "induced to enter into the contract [with CNB] by misrepresentations of material facts. [Thus, his special defense was concerned] with material misrepresentation in the inducement of the contract. *Callahan* v. *Jursek*, 100 Conn. 490, 495, 124 A. 31 [1924]." *Warman* v. *Delaney*, 148 Conn. 469, 474, 172 A.2d 188 (1961). Fraud in the inducement to enter a contract is a well established equitable defense. See *Texaco, Inc.* v. *Golart*, 206 Conn. 454, 459, 538 A.2d 1017 (1988). Consequently, Voog's claim of fraud in the inducement certainly is properly part of CNB's action on the notes. See Practice Book § 164 ("Facts which are consistent with [the plaintiff's] statements but show, notwithstanding, that he has no cause of action, must be specially alleged. Thus . . . fraud . . . must be specially pleaded . . . .").[16]

---

[16] We note that CNB has not argued that Voog was not required specially to plead any of his defenses in order to raise them at trial. There-

In the first count of his counterclaim, Voog reiterated the allegations that CNB had conspired with and provided aid to Colonial to induce him, through fraudulent misrepresentation, to purchase an interest in a limited partnership CNB knew to be valueless. Practice Book § 168 permits a defendant to assert in law or in equity any counterclaim that he has "against the plaintiff's demand," provided that the counterclaim arose out of the same transaction that is the subject of the plaintiff's complaint. 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. Sup. 1982) § 129, p. 89. Because this counterclaim paralleled his special defense, it was also correctly pleaded in this case rather than as a separate action for damages. Based upon this same course of conduct, Voog also counterclaimed under CUTPA; see *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 646 A.2d 1289 (1994) (banking industry covered by CUTPA); and asserted CUTPA as a special defense to CNB's enforcement of the notes. Thus, these allegations of a CUTPA violation, as well as his allegation of a RICO violation, were premised on the same course of conduct underlying Voog's other special defenses and counts of his counterclaim and, therefore, are properly part of this case. See 1 E. Stephenson, supra, § 129, p. 89.

That these defenses and the counterclaim were relevant to CNB's action on the notes is highlighted by events subsequent to the trial court's denials of Voog's motions for reconsideration. In particular, the trial court, *Higgins, J.*, granted CNB's motion for summary judgment against Voog specifically because Voog could not collaterally estop CNB from collecting on the notes. The trial court concluded that Voog could not assert collateral estoppel because there was no identity of issues between the cases. It noted that this lack of issue

fore, our discussion does not turn on any distinction between defenses that can be raised under a general denial and those that must be specially pleaded.

identity was caused because "those claims [necessary to create identity of issues] were excluded when the court granted CNB's motion to strike [Voog's] special defense, sustained CNB's objection to [Voog's] request for leave to amend his answer, and denied his motion for reconsideration."[17] Thus, this subsequent development makes clear that contrary to the determination of the trial court, *Austin, J.*, the special defenses and the counterclaim were material to Voog's defense of CNB's action on the note.

"Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . But unless there is some sound reason for denying permission to amend in order to remedy mispleading, [a request to do so] should be granted." (Citations omitted; internal quotation marks omitted.) *Falby* v. *Zarembski*, 221 Conn. 14, 24, 602 A.2d 1 (1992). Because we conclude that Voog's amended special defenses and counterclaim involved claims at issue in CNB's action on the notes, we also conclude that the trial court's denial of Voog's request to amend his pleadings to include the special defenses and the counterclaim was not premised on a "sound reason." "Although it is not our habit to disturb a trial court's determination of whether an amendment should be permitted, we have done so on rare occasions when allowing the rule to stand would work an injustice to one of the parties. . . . For the reasons stated, we believe

---

[17] Along with his motions for reconsideration, in which he highlighted Gerace's reliance on CUSA as a defense to CNB's suit for failure to comply with the terms of a promissory note; see *Connecticut National Bank* v. *Gerace*, supra, Superior Court, Docket No. 90-00442832; Voog also filed another proposed amendment in which he included special defenses and a counterclaim under the Securities Act of 1933.

that this case presents one of those rare occasions." (Citations omitted.) Id., 26.

The judgment is reversed and the case is remanded with direction to grant Voog's motion for leave to amend his answer and special defenses, and for further proceedings according to law.

In this opinion the other justices concurred.