[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court on plaintiff's motion for summary judgment as to liability only.
On or about July 2, 1992, the defendants entered into a contract for the purchase of property located at 70 Park Street, New London, Connecticut (hereinafter the "property"), which was expressly contingent upon them securing mortgage financing. The McCue Mortgage Company (hereinafter "McCue") loaned $95,400 to the defendants through a duly executed promissory note, and were granted a mortgage on the property. On July 13, 1992, McCue assigned the mortgage and note to the NationsBanc Mortgage Corporation of New York (hereinafter the "plaintiff"). The defendants are in default and owe $93,687.13, plus interest from November 1, 1994, on the note.
The plaintiff exercised its option of declaring the entire balance of the note due and payable. On June 28, 1995, the plaintiff brought this action against the defendants seeking foreclosure.
The defendants filed an answer asserting the following special defense: "The Plaintiff's agent conducted an inspection of the premises pursuant to Veterans Administration Rules and Regulations and failed to disclose that said premises was inundated with lead paint. Said Plaintiff knew or should have known of the existence of said lead paint prior to its lending of CT Page 45 monies to these Defendants for the purchase of the subject premises." (Third Special Defense, #127). In support of their special defense, the defendants submitted an affidavit asserting the following facts: The defendants were advised that the Veterans Administration (hereinafter the "VA") would arrange for an appraisal and inspection of the property to satisfy VA mortgage criteria. After closing, the defendants discovered that the VA appraisal, which they were allegedly never provided, indicated that the property "may contain lead based paint," and according to the defendants, the property is in fact inundated with lead paint. The defendants contend that the VA and McCue's failure to inform them of the presence of lead paint was a "material, untrue misrepresentation of fact." The defendants assert that they would never had bought the property if they had known of the presence of lead paint.
On April 15, 1998, the plaintiff filed a motion for summary judgment as to the complaint and the special defense. The defendants filed their opposition on June 22, 1998. The plaintiff filed a reply memorandum on November 6, 1998. Oral argument was heard at short calendar on November 23, 1998.
The defendants argue that summary judgment should not be granted because they have raised a valid special defense to the plaintiff's foreclosure action. The plaintiff argues that even if the facts alleged in the defendants' special defense are true, it is not a valid defense to a foreclosure action, and therefore, the court should grant summary judgment.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . [T]he trial court must view the evidence in the light most favorable to the nonmoving party . . . [A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . ." (Citations omitted; internal quotation marks omitted.) Maffucciv. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55,707 A.2d 15 (1998).
Because it is undisputed that the complaint and supporting affidavits establish a prima facie case for a foreclosure action; compare Practice Book § 10-69 (formerly § 186); Practice Book CT Page 46 Form 704.31; in order to grant summary judgment, this court must only determine whether the special defense is legally sufficient. See Mechanics Savings Bank v. Walker, Superior Court, judicial district of Hartford at Hartford, Docket No. 500701 (March 13, 1995) (Corradino, J.) (14 CONN. L. RPTR. 129) ("if underlying claim is valid and the special defenses are not supportable . . . the court could grant [summary] judgment in the plaintiff's behalf . . . [and] defendant should . . . support its special defense [by submitting] argument, affidavits, documents and anything else permitted by the Practice Book").
"The traditional defenses available in a foreclosure action are payment, discharge, release, satisfaction or invalidity of a lien . . . In recognition that a foreclosure action is an equitable proceeding, courts have allowed [inter alia] mistake, accident, fraud, equitable estoppel . . . While courts have recognized equitable defenses in foreclosure actions, they have, generally, only been considered proper when they attack themaking, validity or enforcement of the lien, rather than some act or procedure of the lienholder . . ." (Citations omitted; internal quotation marks omitted; emphasis added.) Dime SavingsBank v. Albir, Superior Court, judicial district of Stamford/Norwalk, Docket No. 132582 (February 7, 1995) (D'Andrea, J.). "Courts have not been receptive to foreclosure defendants who have asserted defenses . . . based on factors outside of the note or mortgage." (Internal quotation marks omitted.) HomeSavings of America, Inc. v. Newkirk, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 150962 (January 5, 1998) (Hickey, J.).
Relying on Connecticut National Bank v. Voog, 233 Conn. 352,658 A.2d 172 (1995), the defendants argue that their special defense essentially sets forth the defenses of equitable estoppel or misrepresentation of material facts. That is, the defendants assert that because the plaintiff's assignor and the VA knew that the property may contain lead paint, and withheld that information from the defendants, the plaintiff should be equitably estopped from foreclosing the mortgage. Thus, the only issue before this court is, assuming all of the facts asserted by the defendants in their special defense and affidavit are true, whether the defendants state a legally sufficient defense.
Under the doctrine of equitable estoppel, a party "(1) who is guilty of misrepresentation of existing fact including concealment, (3) upon which the other party justifiably relies, CT Page 47 (3) to his injury, is estopped from denying his utterances or acts to the detriment of the other party . . . [A]ny claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief and the other party must change its position in reliance on those facts, thereby incurring some injury . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Citations omitted; internal quotation marks omitted.) Connecticut National Bank v. Voog, supra,233 Conn. 366-67.
In Voog, the plaintiff bank sought to recover on two promissory notes executed by the defendant. The defendant in Voog
asserted four special defenses: 1) that the plaintiff conspired to sell investments known to be worthless; 2) that the notes were given without consideration; 3) that the plaintiff violated the Connecticut Unfair Trade Practices Act; and 4) that the plaintiff should be equitably estopped from collecting on the notes. The Supreme Court concluded that the trial court abused its discretion in concluding that the defendant's proposed defenses and counterclaims were unrelated to the complaint.
The defendant in Voog alleged facts demonstrating that the plaintiff did or said "something calculated or intended to induce another party to believe that certain facts exist and to act on that belief," and that the defendant "change[d] its position in reliance on those facts, thereby incurring some injury."Connecticut National Bank v. Voog, supra, 233 Conn. 366. The court concluded that the equitable estoppel defense, as alleged by the defendant, "directly relates to [the plaintiff's] ability to prevail under the terms of the notes." (Internal quotation marks omitted.) Connecticut National Bank v. Voog, supra,233 Conn. 367. That is, the alleged conduct of the plaintiff in Voog
— which included conspiring to offer financing known to be valueless, receiving unauthorized commissions, soliciting the defendant to purchase valueless interests, and misrepresenting the assets and liabilities of the interest for the purpose of inducing the defendant to endorse the notes — were all found to be directly related to the validity of the notes.
The equitable estoppel defense asserted in the present case CT Page 48 is legally insufficient because, first, the defendants fail to allege that the plaintiff (or its assignor) "intended to induce [the defendants] to believe that certain facts exist and to act on that belief." See Connecticut National Bank v. Voog, supra,233 Conn. 366. Even when read in the light most favorable to the defendants, the defendants allege, at best, that the plaintiff was negligent in withholding information concerning lead paint in the house. Second, the defendants do not allege that the plaintiff's purported misrepresentation was intended to induce the defendant to purchase the property, or that the defendants actually purchased the property because of the plaintiff's acts. Moreover, the defendants do not allege that they "changed their position" in reliance on the plaintiff's alleged misrepresentation. The defendants, in fact, admit that they were already contractually obligated to purchase the property. Third, the defendants' allegations fail to indicate that the defendants used "due diligence" to know the "truth," or "lacked any reasonably available means of acquiring [the] knowledge." SeeConnecticut National Bank v. Voog, supra, 233 Conn. 367. Fourth, and most fatal to their defense, is the fact that the defendants' allegations fail to show "justifiable reliance" on the plaintiff's purported non-disclosure.
As a matter of law, the defendants are unable to show that they were "justified" in relying on the plaintiff's alleged misrepresentations for the reason that a mortgagee not in possession is under no duty to disclose the existence of known lead paint. Although it is well settled that there is a duty on the part of a seller or broker to "disclose the existence of known lead paint;" Farrah v. Acker, Superior Court, judicial district of Hartford at Hartford, Docket No. 555890 (May 27, 1998) (Lager, J.) (22 CONN. L. RPTR. 39); there is no common-law or statutory duty for a mortgagee not in possession to inspect for, or to disclose the existence of, lead paint.[1] This lack of duty stems from the nature of the mortgage transaction itself, and the relationship between mortgagee and mortgagor.
"A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation." Restatement (Third), Property, Mortgages § 1.1, p. 8 (1997); see also General Statutes § 47-36h. "[A] mortgagee in Connecticut, both by common-law rule and by statute, is deemed to have taken legal title upon the execution of a mortgage on real property (Citations omitted; internal quotation marks omitted.) Red Rooster Construction Co. v. River Associates, Inc., CT Page 49224 Conn. 563, 569, 620 A.2d 118 (1993). "[T]he law of mortgages is built primarily on series of legal fictions . . . [and,] in substance and effect . . . the mortgage is regarded as mere security . . . and the mortgagor is for most purposes regarded as the sole owner of the land." Id. "[W]here a mortgage is intended to secure a specific obligation . . . and that obligation becomes unenforceable under ordinary concepts of contract or commercial law, the mortgage is and ought to be unenforceable as well." 1 G. Nelson D. Whitman, Real Estate Finance Law (3d Ed. 1994) § 2.1, p. 16. "An enforceable loan commitment requires agreement on the terms of the loan, the realty which will serve as security, and mutuality of obligation. With respect to terms, parties must agree upon the principal amount of the loan, the rate of interest, and the terms of repayment. The security must be described with sufficient specificity to permit it to be located." 12 D. Thomas, Thompson on Real Property (Thomas Ed. 1994) § 101.01(e)(1), p. 345.
The mortgagors, defendants in the present case, are unable to allege "justifiable reliance" upon the mortgagee's purported misrepresentation because the relationship of the parties does not create any basis for such reliance. The purpose of the mortgage transaction was simply to provide money to the defendants so that they can fulfil their obligations under a contract to purchase a home. (See Affidavit of Defendants, ¶ 4). The mortgagee, in turn, took legal title to the property to secure the defendants' obligation to repay the loan. See General Statutes § 47-36h. Within that narrow transaction, there are no duties on the part of the mortgagee other than to follow traditional contract principles concerning the terms of the note, security and obligations. See 12 D. Thomas, supra, § 101.01. This court cannot find any ground in common law or statute to support the theory that a mortgagee not in possession has any obligation to bring to the mortgagor's attention the presence of any defects, such as lead paint, in the collateral.[2]
For the foregoing reasons, unlike the alleged misconduct of the plaintiff in Voog, the purported misrepresentations by the plaintiff in the present case are not "directly related" to the validity of the mortgage or note. See Connecticut National Bankv. Voog, supra, 233 Conn. 367. Indeed, the alleged misconduct of the plaintiff is "based on factors outside of the note or mortgage." See Home Savings of America, Inc. v. Newkirk, supra,
Superior Court, Docket No. 150962. Accordingly, the defense of equitable estoppel is legally insufficient as alleged by the CT Page 50 defendants.
The misrepresentation of material fact, or fraudulent misrepresentation, defense is also legally insufficient. "The elements of fraudulent misrepresentation are as follows: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false representation to her detriment." Dorsey v. Mancuso, 23 Conn. App. 629, 633,583 A.2d 646, cert. denied, 217 Conn. 809, 585 A.2d 1234 (1991). For the same reasons that their equitable estoppel defense fails, the defendants' fraudulent misrepresentation defense fails.[3] There are no allegations, either in the special defense or affidavit, that indicate the plaintiff's alleged intent to induce the defendants to act. Moreover, as an undisputed holder in due course, the plaintiff is free from all defenses "except . . . such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." See General Statutes § 42a-3-305. Because the defendants never allege that they were fraudulently induced, as defined under §42a-3-305, into executing the promissory note in connection with the mortgage, their defense on this ground is legally insufficient. Cf. Amatulli v. People's Bank, 917 F. Sup. 895, 904
(D.Conn. 1996) (granting summary judgment on counterclaim to enforce promissory note when complaint failed to allege fraudulent inducement).
Accordingly, because the plaintiff's underlying claim for foreclosure is valid, and the defendants' special defense is legally insufficient, the plaintiff's motion for summary judgment should be granted.
Mihalakos, J.