[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a Summary Process action in which the plaintiff-lessor is seeking possession of commercial premises leased to the defendant-lessee on the ground of nonpayment of rent. The defendant filed an answer to the complaint in which he admits that he has not paid the agreed upon rent, together with three special defenses. The first two special defenses allege material misrepresentations by the lessor as to (1) the number of parking spaces available for use by lessee, and (2) the location of the boundary lines of the leased property. The third special defense alleges that the lessor failed to make repairs to the leased property as required by the terms of the lease. CT Page 6965
A trial was held on May 20, 1999 at which time the court heard testimony form the plaintiff, Jack Gustamachio, the defendant, Peter Balch, as well as Patricia Estanislau, an employee of the defendant. Additionally, several documents were admitted into evidence. After carefully reviewing the pleadings, weighing and considering all of the evidence, and after assessing and evaluating the credibility of the witnesses, the court finds the following facts to have been proven.
The plaintiff, doing business as Granite Realty Associates, is the owner of a small shopping plaza located at 378 Kelley Road, Vernon Connecticut. In June 1998 the plaintiff met with the defendant and Ms. Estanislau at the plaza to discuss the defendant's interest in leasing a store within that complex for the purpose of opening and operating a restaurant. At that time a hotel and a parking area were located next to the shopping plaza. A sign was posted on the property indicating that space could be leased for the construction of a restaurant at that location. The evidence shows that a proposal to erect a hotel and a restaurant on the site was approved by the Vernon Planning and Zoning Commission in 1995, and the site plan was approved in 1996. This was public information and therefore available to the defendant at the time. (Exhibits A and B)
Balch and Estanislau viewed the property with Gustamachio and discussed with him the availability of parking for his customers. Gustamachio told Balch that his customers could use any of the parking spaces within the plaza parking lot as well as on the lot next door. in response to his inquiry about the construction of a restaurant, Balch was told by Gustamachio that since he had an easement giving him the right to use the lot for parking, no one could build a restaurant on the property without his permission. The court finds, based upon its assessment of the credibility of the witnesses, that when Gustamachio made that representation to Balch he believed it to be true. On July 23, 1998, after having the property inspected by a town building inspector, Balch gave Gustamachio a security deposit in the amount of $2,350 and signed a fiveyear lease for the property. (Exhibits 1 and 2). Under the terms of the lease the lessee is obligated to pay rent to the lessor the amount of $2,333.33 per month on the first days of every month. Failure of the lesser to make such payment, and continued failure to make payment within ten days after being given written notice, gives the lessor the right to bring legal action for possession of the premises. CT Page 6966
There are only two brief references to parking in the lease agreement. (Exhibit 1) Paragraph 4 permits the lessor to specify and enforce compliance with a designated parking area for lessee's employees, and paragraph 12 collaterally refers to the lessee's right to use the parking area of the shopping plaza. The lease does not indicate how many parking spaces will be available to the lessee.
Balch opened the restaurant on September 8, 1998 under the name Peter's Family Restaurant. Approximately one week later construction of a new Angellino's restaurant was begun on the parking lot next door. Balch testified that he immediately notified Gustamachio of the construction and Gustamachio, who immediately went to the site, told Balch that he was going to contact his attorney to look into the situation. The court finds, based upon the testimony of both parties, that Gustamachio was previously as unaware of this development as was Balch.[1]
During the construction of the new restaurant many parking spaces on the lot were unavailable; however, since completion of the restaurant, although there are fewer overall parking spaces available, there is credible evidence that Balch's customers have the right to use the parking spaces available in the next door lot by virtue of Gustamachio's parking easement.
The defendant, who has 27 years of experience working in restaurants, testified that Peter's Family Restaurant has not been successful and that he is in the process of closing the restaurant with the hope of relocating. Mr. Balch testified that he believed that the business would have been successful if he had sufficient parking for his customers. However, he offered little credible evidence, and no corroborating evidence, concerning how many customers or how much business he lost due to a lack of parking spaces compared to competition from Angellino's. Under the facts of the case, it likely that competition from the new Angellino' s Restaurant next door to Peter's Family Restaurant is the real culprit in the demise of the defendant's fledgling restaurant business.
The defendant failed to pay his rent on September 1, 1998, October 1, 1998, November 1, 1998, December 1, 1998, January 1, 1999, February 1, 1999, and March 1, 1999. He made partial rent payments of $1,000.00 on November 16, 1998, December 21, 1998, and December 31, 1998, as well as a partial rent payment in the amount of $450.00 on December 15, 1998. He has not made any rent CT Page 6967 payments since the commencement of this summary process action (Exhibit 2), nor is there any evidence that he has paid the rent owed into an escrow account or to the Court.
The complaint alleges and the court finds that the plaintiff has proven by a fair preponderance of the evidence that the defendant did not pay and has not paid the rent of February 1, 1999 as required under the terms of the lease. The court further finds that the plaintiff- lessor served the defendant-lessee with Notice to Quit Possession on February 24, 1999, but that the defendant-lessee remains in possession of said premises as of the date of trial.
The defendant, through counsel, has indicated that he is not seeking nor does he intend to remain in possession of the premises. He is only seeking sufficient time to satisfy several contractual obligations to his customers and than he intends to close and relocate his business.
SPECIAL DEFENSES:
The first two Special Defenses are essentially brought under the doctrine of equitable estoppel. "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury."(Internal citations omitted) Connecticut National Bank v. Voog,233 Conn. 352, 366 (1995) "An equitable estoppel arises only where one party has done something intended or calculated to induce another to believe in the existence of certain facts and to act on that belief . . . A reasonable reliance upon the misleading conduct, resolving in some detriment to the party claiming the estoppel is also required." S.H.V.C. Inc. v. Roy, 37 Conn. Sup. at 584 (1981)
FIRST SPECIAL DEFENSE: The court finds that the defendant has not proven by a fair preponderance of the evidence that the plaintiff intentionally misrepresented any material facts concerning the availability of parking for the defendant's customers in order to induce the defendant to enter into the lease agreement, nor has he proven that a lack of parking spaces resulted in a loss of business. The court finds for the plaintiff as to the First Special Defense. CT Page 6968
SECOND SPECIAL DEFENSE: The court does not find any credible evidence to prove that the plaintiff misrepresented any material fact concerning the boundary lines of the property, or that the defendant relied upon to his detriment any representation or misrepresentation of the plaintiff concerning boundary lines. The court finds for the plaintiff as to the Second Special Defense.
THIRD SPECIAL DEFENSE: The defendant claims that the plaintiff failed to make repairs to the property as required by the terms of the lease. While section 9 of the lease agreement requires the lessor to maintain specified parts of the property in good repair, section 18 provides that in the event the lessor fails to perform the covenants and/or agreements of the lease, the lessee may require the lessor to remedy such defects by the service of written notice. The testimony of both the plaintiff-lessor and the defendant-lessee is that the lessee never served the lessor with written notice of any needed or required repair to the property. The court finds that the defendant has not proven by a fair preponderance of the evidence that the plaintiff failed to make any repairs to the property as required by the terms of the lease. The court finds for the plaintiff as to the Third Special Defense.
 Judgement and possession of the premises shall enter for the plaintiff.
Terence A. Sullivan, Superior Court Judge