[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff James M. Coady (James) originally brought this action in three counts against Gregory G. Martin (Martin) only on August 15, 1997 seeking an injunction and money damages. Martin answered that complaint and put forth four special defenses and a "cross-complaint" against plaintiff seeking money damages and an injunction on December 29, 1997.
In June 1998 Martin cited in as defendants Michael O'Keefe ("O'Keefe) and Thomas Heany (Heany). On June 10, 1998 James filed an amended complaint including those two as defendants. On September 1, 1998 he filed a revised complaint in three counts. On September 14, 1998 defendant Martin filed a revised answer, seven special defenses, and a counterclaim. On September 22, 1998 plaintiff James filed a reply to Martin's special defense and an answer to his counterclaim.
On October 1, 1998 Heany filed an answer to plaintiff's revised complaint and on October 7, 1998 O'Keefe filed his answer.
The case was scheduled for a court trial on December 2, 1998. It was then advanced to December 4, 1998.
James's counsel sought to depose Heany and was unsuccessful as of March 9, 1999 at which time he informed the court that he would resort to the "Practice Book to take" it.
On May 28, 1999 a trial date of August 17, 1999 was ordered. On August 3, 1999 plaintiff James filed a motion for a continuance of that ordered date. That motion was denied and the trial began August 17, 1999. On August 31, 1999 Joanne L. Coady CT Page 593 (Ms. Coady) wife of James was permitted to intervene as a plaintiff. The trial ended September 22, 1998 and briefs were ordered.
On October 18, 1999 plaintiffs filed their trial brief and on the same day by motion dated October 15, 1999 they moved to amend the complaint. The defendants objected to that motion.
 Facts
Plaintiffs' claims are based on a written Membership and Subscription Agreement dated June 17, 1996 (Agreement). James and the defendant Martin had come to know each other over the one year before the Agreement and became interested in promoting the use of the Ebbet's Field trade name and logo which were owned by Martin.
Ms. Coady lent some money to the LLC but never invested in it and was never a member.
Martin, O'Keefe and a person named Barnes began talking about how to use the Ebbet's Field trade mark and logo. Barnes dropped out and Coady came into the discussions and all began talking about the rights and how to create a profit-making business with them. O'Keefe, James and Martin contributed time and money. All worked and discussed this goal. Heany came in to work some time later. But they all had trouble selecting a plan for the possible business. Minor League baseball teams in Hartford and other venues were discussed. Also discussed were internet sales, and Dillon Stadium. Selling rights on the internet was given a modest trial.
Martin and James often discussed how to divide the equity in the proposed enterprise among all the people involved. James verbally recognized O'Keefe and Hearny as "equitable" owners in the LLC but the parties never agreed as to the percentage of equity each of the four interested people would have. Ms. Coady was never considered as part of the group for possible investment. Plaintiffs' position is that she was referred to by the expression "or the assigns" in the agreement Nothing was ever assigned to her. James never owned any part of the LLC and he never lent it any money. As late as August 1999 he denied that he owned any interest in the LLC.
In the early 1990s and through the time of trial James had CT Page 594 many investment failures, financial problems and suits brought against him. He was not always candid about these facts when telling Martin this background and about his relationships with past and possible future investors. In 1995 he had no net worth.
Plaintiff testified that his "legal" residence was and is in the State of Florida. The complaints allege his residency as Connecticut. There is no reference in the complaints to Florida.
In 1994 through time of trial Ebbet's Field use was just a concept to use the trade mark rights and logo. In 1996 James made efforts in the direction of getting various minor league teams to come to Hartford but Hartford's lack of a stadium was a serious drawback to those schemes.
At the time of trial and for about one year before there was never any effort by Hearny to get the LLC enrolled with any Dillon Stadium project or to make any connection with any National League baseball team. The last actions of LLC were on Web site in early 1999.
When matters were breaking down among the parties, James said that if he did not get his way he would "tank the company". He tried to oust Martin from the LLC and substitute a man named Nathan. This failed. James then in the Fall of 1997 began to notify public officials about this legal action. He also threatened Martin by letter of October 27, 1997 that he would "notify Fred Wilson, The Mets Organization and appropriate Major League Baseball officials of the litigation and the risks of dealing with unauthorized parties" unless "all ownership and management issues related to Coady v. Martin are resolved by 5:00 p. m. Wednesday (sic) November 5, 1997."
He also wrote to Martin's employer on September 18, 1997 that he "had to take legal action against Greg Martin to protect my interests in Ebbets Field Ventures, LLC."
The defendants moved to dismiss the case during trial because James testified that he was not a part owner or member of the LLC. In addition, James filed a verified complaint in August 1997 stating that James became a 50% owner of the LLC. It makes no mention of Ms. Coady.
Ms. Coady did not list the LLC on her financial statement of April 1999. CT Page 595
Ms. Coady did not testify in this matter although she was admitted as a party.
There was no evidence from the principal of the grant of any agency to James.
Of course, the Operating Agreement filed with the Secretary of State sets forth specific methods of assigning a member's rights and of substituting a member. These requirements were never met by anyone. Nor was the required "effective registration statement required under federal laws for `legended' securities."
Joanne Lerman sent a personal check for $10,000 to the LLC for the "Coady Capital Account" on or about April 17, 1997. Constitution Securities of Florida (Constitution) sent a $3,000 check to the LLC for "Capital Account" signed by Joanne L. Coady on January 31, 1999. Joanne L. Coady sent the LLC a $3,000 check for "Coady Capital Contribution" on March 26, 1997. Constitution sent the LLC a $2,000 check for "Capital Account Coady" on March 4, 1997 signed by Joanne L. Coady, another for $1,500 on March 25, 1996, another for $1,200 on January 9, 1997 and another on November 28, 1996 for $600. Joanne Lerman sent another check to LLC for $2,700 for "Coady Capital Account" on December 6, 1996.
 Law
This is basically a contract case and plaintiffs must prove that there was a meeting of the minds. Nutmeg State MachineryCorporation v. Shuford, 129 Conn. 659. There was never a meeting of the minds about what the percentage of the ownership would be among the four parties mentioned in the Agreement. Nor was there a meeting of the minds as to the time or amount of any payment into the LLC by anyone to obtain a membership interest. The court looks at the contract to determine the intention of the parties.Hughes v. Contemporary Mission, Inc., 180 Conn. 150, 152. Using the contract and even the parties oral expressions the court cannot infer that there was ever a meeting of the minds here.
James claims that in some way his use of the expression "or assigns" meant his wife Joanne. There was no assignment to her or other evidence of that and the plaintiff James claimed he was the only person, other than Martin, who had an interest in the LLC right up through July 1999. Contracting parties must be set forth with reasonable certainty in any contract. Ubysz v. Dr. Pierto,
CT Page 596185 Conn. 47, 51. They were not here.
"A contract must be supported by some valuable consideration.Connecticut National Bank v. Voog, 233 Conn. 352, 366. Martin put in his Ebbet's Field trademark rights. James did not promise to put in anything and put in nothing. Joanne and Constitution did send money to the LLC but neither were a party to the Agreement. At best they might be creditors. Plaintiffs make some suggestion that Ms. Coady is a third party beneficiary. There is no such allegation in any complaint. In addition, the Operating Agreement of October 1994 specifically states that none of its provisions "shall be for the benefit of or enforceable by any third parties, including creditors of the company." § 12.3
Plaintiff's motion to file an amended complaint is denied as it is filed entirely too late and it would be greatly unfair to the defendants after the conclusion of the trial.
Plaintiff's motion for sanctions is denied.
As there never was a contract, recission is not appropriate. This court holds that in equity plaintiff, Ms. Coady, should receive the amount of money that she gave to the LLC. The court finds Joanne Lerman and Joanne L. Coady to be the same person as Ms. Coady. The sum to be paid her is $15,700.
Judgment for defendants against plaintiffs on the complaint except as to plaintiff's request for further equity.
Judgment for defendants against plaintiffs on the counterclaims to the extent of granting a permanent injunction against plaintiffs to prohibit either from using the name Ebbet's Field or any visual or phonetic equivalent or near equivalent thereof.
N. O'Neill, J.