LARRY L. SHARP, ADMINISTRATOR (ESTATE OF DAVID C. SHARP), ET AL. *v.* NORBERT E. MITCHELL, SR., ET AL.
(13168)

PETERS, C. J., HEALEY, SHEA, GLASS and COVELLO, Js.

Argued May 11—decision released September 6, 1988

*Joan C. Harrington,* for the appellants (plaintiffs).
*Ronald D. Williams,* for the appellees (defendants).

ARTHUR H. HEALEY, J. This appeal arises out of a wrongful death action brought on behalf of three men who were asphyxiated in an underground fuel storage facility while employed by the defendant Norbert E. Mitchell Company. The plaintiffs, administrators of the estates of David C. Sharp, Robert Vidal and Alois Entress, alleged that the defendants, Norbert E. Mitchell, Sr., and Norbert E. Mitchell, Jr., d/b/a Norbert E. Mitchell Company, negligently caused those deaths. The trial court, *McDonald, J.,* granted the defendants' motion for summary judgment as to the counts of the plaintiffs' amended complaint that alleged negligence by the defendants, concluding that the exclusivity provision of the Workers' Compensation Act was constitutional. The trial court, *Lavery, J.,* granted the defendants' second motion for summary judgment, concluding that the plaintiffs' claim that the defendants had a "dual capacity" was a separate cause of action and therefore was barred by the statute of limitations.[1] We find no error.

The basic facts concerning this tragic incident are not disputed. The plaintiffs' decedents were employed by the defendant Norbert E. Mitchell Company, which

---

[1] The plaintiffs also filed claims for loss of consortium but the trial court, *Moraghan, J.,* granted the defendants' motion to strike those claims. The plaintiffs are not challenging that ruling in light of this court's decision in *Ladd* v. *Douglas Trucking Co.,* 203 Conn. 187, 197, 523 A.2d 1301 (1987).

is in the retail petroleum business. The facilities owned by the defendants included an underground facility that housed seven 25,000 gallon petroleum storage tanks. This underground storage area is approximately six feet wide, fifty feet long and ten feet high, with access to the tanks provided by a ladder through a thirty-six inch manhole. On February 3, 1983, the defendant Norbert E. Mitchell, Jr., instructed Sharp to enter the underground area and shut off a valve on one of the tanks. When Mitchell heard some banging noises, he sent Vidal into the underground storage area to aid Sharp. Vidal collapsed at the bottom of the ladder and Mitchell left the area to call for help. Entress then descended the ladder with a rope, but he also collapsed while on the ladder. Vidal and Entress were pronounced dead approximately one hour after the incident while Sharp was pronounced "brain dead" two days later, and shortly thereafter he was removed from life support systems.

Neither Sharp nor Entress was survived by dependents as defined by the Workers' Compensation Act. Their representatives were entitled to funeral expenses and their respective medical bills were paid directly to the hospital. Vidal's funeral expenses and medical bills were also paid and his dependents are currently receiving workers' compensation benefits.

The plaintiffs' first complaint was filed on August 10, 1983, and alleged that the deaths were caused by the intentional, serious and willful misconduct of the defendants. The defendants moved for summary judgment, contending that the "intentional misconduct" exception as outlined in *Jett* v. *Dunlap,* 179 Conn. 215, 221, 425 A.2d 1263 (1979), did not apply and therefore the action was barred by the exclusivity provision of the Workers' Compensation Act. General Statutes

§ 31-294 (a).[2] The plaintiffs agreed, for the purposes of the summary judgment motion, that the intentional misconduct exception did not apply and subsequently amended their complaint to allege negligence by the defendants and to argue that the exclusivity provisions of the Workers' Compensation Act violated article first, § 10, of the constitution of Connecticut. On January 20, 1986, the plaintiffs further revised their complaint to allege that the defendants were negligent in designing and constructing the underground storage facility and therefore were liable under a "dual capacity" theory.[3] The defendants, who previously had filed a motion for summary judgment to the complaint that alleged

---

[2] General Statutes § 31-284 (a) provides: "BASIC RIGHTS AND LIABILITIES. CIVIL ACTION TO ENJOIN NONCOMPLYING EMPLOYER FROM ENTERING EMPLOYMENT CONTRACTS. (a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

[3] The "dual capacity" doctrine describes the situation where an employer has two capacities or legal persona, such as employer and owner; see, e.g., *Ogden* v. *McChesney,* 41 Colo. App. 191, 193, 584 P.2d 636 (1978); or employer and manufacturer. See, e.g., *Bell* v. *Industrial Vangas, Inc.,* 30 Cal. 3d 268, 282, 637 P.2d 266, 179 Cal. Rptr. 30 (1981). A noted authority explained the "dual capacity" as follows: "An employer may become a third person, vulnerable to tort suit by an employee if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A A. Larson, Workmen's Compensation Law (1983) § 72.81, p. 14-229. In a related context, we have recently rejected the dual capacity doctrine. *Panaro* v. *Electrolux Corporation,* 208 Conn. 589, 545 A.2d 1086 (1988).

negligence, planned to file another motion for summary judgment to the complaint that alleged a dual capacity theory. To facilitate matters for the court, the plaintiffs amended the complaint again. In a complaint dated September 19, 1986, the plaintiffs alleged in counts one, three and five that the defendants as employers had negligently caused the deaths of their decedents. In counts two, four and six, the plaintiffs alleged that the defendants had acted negligently in a capacity other than that of an employer when they designed and constructed the underground storage area. The parties stipulated that the pending motion for summary judgment would address the claims of negligence in counts one, three and five, and that the defendants would shortly file another summary judgment motion that would address the dual capacity claims in counts two, four and six. On October 1, 1986, the defendants filed that latter motion for summary judgment.

On October 21, 1986, the trial court, *McDonald, J.,* granted the defendants' first motion for summary judgment, rejecting the argument of the plaintiffs that the Workers' Compensation Act violated article first, § 10, of the constitution of Connecticut. On February 2, 1987, the trial court, *Lavery, J.,* granted the defendants' second motion for summary judgment, dated October 1, 1986, concluding that the plaintiffs' dual capacity claims were barred by the statute of limitations and by the exclusivity provisions of the Workers' Compensation Act.

On appeal, the plaintiffs claim that the trial courts erred in: (1) holding that the Workers' Compensation Act was constitutional as applied to the plaintiffs; (2) holding that the plaintiffs' dual capacity claims were barred by the statute of limitations; and (3) rejecting the dual capacity doctrine under the circumstances of this case. We conclude that the first and second issues

raised by the plaintiffs on appeal were correctly decided by the trial courts and therefore we do not reach the third issue.

I

The plaintiffs argue that they should be permitted to sue the defendants for negligently causing the deaths of their decedents because the Workers' Compensation Act, as applied to them, violates article first, § 10, of the constitution of Connecticut. Under the Connecticut Workers' Compensation Act, the plaintiffs are limited to remedies under the act. General Statutes § 31-274 et seq.; see, e.g., *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 532, 494 A.2d 555 (1985); *Sullivan* v. *State,* 189 Conn. 550, 558, 457 A.2d 304 (1983); *Jett* v. *Dunlap,* supra, 217. We agree with the defendants that the Workers' Compensation Act can withstand the plaintiffs' constitutional challenge.

Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." The plaintiffs reason that since a common law right to sue for wrongful death existed at the time of the ratification of the constitution of Connecticut in 1818 and that since such a right cannot be abolished by the legislature without providing a reasonable alternative remedy under *Gentile* v. *Altermatt,* 169 Conn. 267, 283, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976), the Workers' Compensation Act is unconstitutional as applied to them. Although it is correct to say that article first, § 10, protects "constitutionally incorporated" common law or statutory rights from abolition or significant limitation, these rights include only those in existence in 1818. Id.; see also *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 585, 512 A.2d 893 (1986).

After the briefs were filed in this case, this court announced the decision in *Ecker* v. *West Hartford,* 205 Conn. 219, 530 A.2d 1056 (1987), where we held that no action for wrongful death existed at common law in Connecticut. The *Ecker* court, after exhaustive research and analysis of previous Connecticut cases and the applicable law throughout the United States, concluded: "With only a few exceptions, courts in America have almost universally accepted, and continue to accept, 'the rule that a civil action for wrongful death was not recognized at common law, and that no such cause of action may be maintained except under the terms and authority of a statute.' 61 A.L.R.3d 906, 909, and authorities cited therein, 909–10 n.3, and Sup. 59." Id., 227. The court also held "that no action for wrongful death existed at common law or exists today in Connecticut except as otherwise provided by the legislature." Id., 231. It is clear that *Ecker* controls this case concerning the issue of whether a common law right to sue for wrongful death existed at common law that would survive the adoption of the Connecticut constitution of 1818.

The plaintiffs maintained at oral argument that *Ecker* does not control the case before us for three reasons, none of which is persuasive. First, the plaintiffs summarily suggest that they are suing for personal injury and that *Ecker* involved a wrongful death claim.[4] The decedent in *Ecker* was an employee who was struck by a wooden canopy that fell from a building, resulting in his death the next day. The plaintiffs in this case are employees who were asphyxiated. Two were pronounced dead at the scene and the other died two days later. It is difficult to ascertain on what basis the plaintiffs can expect this court to treat these claimants

---

[4] The plaintiffs' own brief characterizes their claim as a "wrongful death action."

differently. It is clear that both cases involve wrongful death and that any cause of action instituted on that basis is barred by *Ecker*.

In a related argument, the plaintiffs next claim that *Gentile* v. *Altermatt,* supra, held that a negligence action for personal injury is a constitutionally protected right and therefore their "personal injury" claim is protected by article first, § 10. This claim is also supported only by a conclusory assertion at oral argument. Since a wrongful death claim is barred by *Ecker,* the apparent logic of the plaintiffs' argument is that, nevertheless, they be permitted to sue for any personal injury that the decedents suffered before death. This court has held on numerous occasions that the exclusivity provisions of the Workers' Compensation Act bar actions by employees against their employers for job related injuries. See, e.g., *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* supra, 532; *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 98, 491 A.2d 368 (1985); *Jett* v. *Dunlap,* supra, 217. Although this court did not face a direct challenge to the Workers' Compensation Act as violating article first, § 10, in those cases, it is implicit in those holdings that the Workers' Compensation Act passes constitutional muster for personal injuries suffered by employees. A statute that abolishes a constitutionally incorporated right of action does not violate article first, § 10, if "the legislatively created remedy by which it is in part replaced is a reasonable alternative." *Gentile* v. *Altermatt,* supra, 287. In a related context, this court held that the benefits under the Workers' Compensation Act provided a reasonable alternative to products liability suits brought more than ten years after a defendant had parted with the product. *Daily* v. *New Britain Machine Co.,* supra, 585. It is unnecessary to itemize all the extensive alternative benefits that an employee receives in return for forfeiting a right to sue his employer for a common law

tort but they include immediate payment of medical bills; General Statutes § 31-294; compensation for periods of incapacity; General Statutes § 31-307; and benefits for partial permanent disability. General Statutes § 31-308 (b). To reiterate what we said in *Jett* v. *Dunlap,* supra, 217: "In previous decisions under the Workmen's Compensation Act we have consistently held that where a worker's personal injury is covered by the act, statutory compensation is the sole remedy and recovery in common-law tort against the employer is barred." Accord *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* supra, 532; *Mancini* v. *Bureau of Public Works,* 167 Conn. 189, 193, 355 A.2d 32 (1974).

Lastly, the plaintiffs argue that *Ecker* does not apply because the readoption of the constitution of Connecticut in 1965 preserved all common law and statutory rights in existence in 1965. Therefore, the plaintiffs claim that since a statutory action for wrongful death[5] was extant in 1965, the readoption of the constitution of Connecticut protected that right from abrogation by the state legislature unless a reasonable alternative was provided. Although it is true that a statutory wrongful death action was well established in 1965, the plaintiffs' argument fails because the Workers' Compensation Act was also well established in 1965. Connecticut passed its initial version of the Workers' Compensation Act in 1913. Public Acts 1913, c. 138, p. 1735. When the state constitution was readopted in 1965, it

[5] General Statutes (1958 Rev.) § 52-555 provides: "ACTIONS FOR INJURIES RESULTING IN DEATH. In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within one year from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omision complained of."

was well established that an employee was prevented from instituting an action against his employer for a work related death or injury. See, e.g., *Crisanti* v. *Cremo Brewing Co.,* 136 Conn. 529, 531, 72 A.2d 655 (1950); *Hoard* v. *Sears Roebuck & Co.,* 122 Conn. 185, 188, 188 A. 269 (1936). In *Crisanti* v. *Cremo Brewing Co.,* supra, we held: "It is, of course, well settled that where there exists the relationship of employer and employee within the Workmen's Compensation Act the employee may recover for injuries sustained in the course of his employment only as provided by the act. The employer has no common-law liability to his employee." Since 1965, the legislature has not abolished any right that the plaintiffs seek to vindicate that existed in 1965.[6] The readoption of the state constitution in 1965 does not avail the plaintiffs.

The plaintiffs also attack *Ecker* on the ground that the intent of the framers who ratified the constitution of Connecticut of 1818 must govern what was then a constitutionally incorporated statutory or common law right. See *Gentile* v. *Altermatt,* supra, 284. The plaintiffs reason that since *Cross* v. *Guthery,* 2 Conn. (Root) 90 (1794), can be read to support a cause of action for wrongful death, the framers must have intended to incorporate such a right since *Cross* v. *Guthery* was not expressly overruled until 1856 in *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven R.R. Co.,* 25 Conn. 265, 273 (1856). The plaintiffs discern this purported intent merely by the fact that the four line opinion in *Cross* was not expressly discredited until after the 1818 constitution of Connecticut was ratified. Our opinion in *Ecker,* however, after careful review of the facts of *Cross,* concluded: "Although the case involved

---

[6] The only change in General Statutes § 52-555, Connecticut's wrongful death statute, since 1965 was an amendment in 1969 that increased the time within which to bring an action from one year to two years. Public Acts 1969, No. 401, § 1.

the death of the plaintiff's wife, the action appears to have sounded in contract. Therefore we do not read the *Cross* case as having clearly established that a wrongful death action existed at common law in Connecticut." *Ecker* v. *West Hartford,* supra, 229 n.11. Accordingly, the *Ecker* court also concluded: "Therefore we view the case of *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven R.R. Co.,* supra, which overruled *Cross,* not as having made a change in the Connecticut law, but rather, as having recognized that the *Cross* court was in error." Id., 229. The plaintiffs offer no evidence that would require us to reexamine the analysis in *Ecker.* We also note that to hold current statutes unconstitutional based on pure speculation about alleged misperceptions by those who framed our state constitution in the early 19th century is not a step taken lightly and we decline to do so in this case. The *Ecker* decision satisfactorily answers the plaintiffs' claim.

Although our interpretation of our own constitution is dispositive on this issue, we also recognize that the workers' compensation scheme has been sustained against attack on constitutional grounds, including access to the courts, in many jurisdictions throughout the country. See, e.g., *Kandt* v. *Evans,* 645 P.2d 1300, 1306 (Colo. 1982); *Young* v. *O. A. Newton & Son, Co.,* 477 A.2d 1071, 1078 (Del. Super. 1984); *Acton* v. *Fort Lauderdale Hospital,* 440 So. 2d 1282, 1284 (Fla. 1983); *Boyd* v. *Barton Tranfer & Storage, Inc.,* 2 Kan. App. 2d 425, 430, 580 P.2d 1366 (1978); *Schmidt* v. *Modern Metals Foundry, Inc.,* 424 N.W.2d 538, 542 (Minn. 1988); *Linsin* v. *Citizens Electric Co.,* 622 S.W.2d 277, 281 (Mo. App. 1981); *Roberts* v. *Gray's Crane & Riging, Inc.,* 73 Or. App. 29, 35, 697 P.2d 985, review denied, 299 Or. 443, 702 P.2d 1112 (1985); *Kline* v. *Arden H. Verner Co.,* 503 Pa. 251, 255, 469 A.2d 158 (1983); *Edmunds* v. *Highrise, Inc.,* 715 S.W.2d 377, 379

(Tex. Civ. App. 1986); *Messner* v. *Briggs & Stratton Corporation,* 120 Wis. 2d 127, 134, 353 N.W.2d 363 (1984). A leading commentator has noted: "Exclusiveness clauses have consistently been held to be constitutional, under the equal protection and due process clauses of both federal and state constitutions. Attacks based on specific state constitutional provisions, such as those creating a right of action for wrongful death, have fared no better." 2A A. Larson, Workmen's Compensation Law (1988) § 65.20, pp. 12-18–12-20.

We conclude that since an action for wrongful death was not a constitutionally incorporated right at the time of the constitution of 1818, we need not reach the issue of whether the Workers' Compensation Act provides a reasonable alternative remedy.[7]

## II

The plaintiffs next argue that the trial court erred in holding that the dual capacity claims were barred by the statute of limitations. The accident in this case occurred on February 3, 1983, and the original complaint was filed on August 10, 1983. The dual capacity theory was first asserted on January 20, 1986, and then further "clarified" in subsequent complaints dated September 19, 1986, and October 20, 1986. The operative statute of limitation is General Statutes § 52-555,[8]

---

[7] The trial court, *McDonald, J.,* assuming arguendo that wrongful death was a constitutionally incorporated common law right, made extensive findings that Connecticut's Workers' Compensation Act provides a reasonable alternative remedy. In view of our holding today, we do not address these findings.

[8] General Statutes § 52-555 provides: "ACTIONS FOR INJURIES RESULTING IN DEATH. In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained

which states in pertinent part: "[N]o action [for wrongful death] shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered . . . ." It is clear that if the complaint on January 20, 1986, which first articulated a dual capacity theory, does not relate back to the original complaint, the plaintiffs' cause of action under that theory is barred by the statute of limitations. We must determine if the amended complaint relates back to the original complaint or states a new cause of action.

"A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 197, 91 A.2d 778 [1952]; *Veits* v. *Hartford,* 134 Conn. 428, 434, 58 A.2d 389 [1948]. 'A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action.' *Pavelka* v. *St. Albert Society,* 82 Conn. 146, 147, 72 A. 725 [1909]. A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. *Johnson* v. *Wheeler,* 108 Conn. 484, 488, 143 A. 898 [1928]; *Galvin* v. *Birch,* 97 Conn. 399, 401, 116 A. 908 [1922]; *O'Brien* v. *M & P Theatres Corporation,* 72 R.I. 289, 296, 50 A.2d 781 [1947]. It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an

or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of."

entirely new and different factual situation is presented, a new and different cause of action is stated. *Veits* v. *Hartford,* supra; *United States* v. *Memphis Cotton Oil Co.,* 288 U.S. 62, 67, 53 S. Ct. 278, 77 L. Ed. 619 [1933]; *Seaboard Air Line Ry.* v. *Renn,* 241 U.S. 290, 293, 36 S. Ct. 567, 60 L. Ed. 1006 [1916]." *Gallo* v. *G. Fox & Co.,* 148 Conn. 327, 330, 170 A.2d 724 (1961); see also *Bielaska* v. *Waterford,* 196 Conn. 151, 154, 491 A.2d 1071 (1985); *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 239, 429 A.2d 486 (1980); *Keenan* v. *Yale New Haven Hospital,* 167 Conn. 284, 285, 355 A.2d 253 (1974); *Baker* v. *Baker,* 166 Conn. 476, 486, 352 A.2d 277 (1974).

In *Giglio* v. *Connecticut Light & Power Co.,* supra, 239–40, we recognized that our relation back doctrine "is akin to rule 15 (c) of the Federal Rules of Civil Procedure, which provides in pertinent part: '(c) RELATION BACK OF AMENDMENTS. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.' " Further, we noted the policy behind the rule as follows: " 'Rule 15 (c) is based upon the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford, 3 Moore's Federal Practice para. 15.15 [3]. The objective of state statutes of limitations, to protect persons from the necessity of defending stale claims, is served under Rule 15 (c), since the amendment will not relate back unless the orginal pleading has given fair notice to the adverse party that a claim is being asserted against him from some particular transaction or occurrence, Wright, Law of Federal Courts, p. 276 (2d ed. 1970).' " Id., 240.

By comparing the cause of action stated in the original complaint with the cause of action stated in the com-

plaint that first alleged the dual capacity theory, we conclude that two different causes of action were stated. In the original complaint, as amended on July 30, 1985, the plaintiffs alleged that the defendant Norbert E. Mitchell, Jr., intentionally and/or negligently caused the death of the plaintiffs' decedents by ordering them to enter an underground area, which Mitchell knew to be without adequate ventilation, contained toxic fumes, lacked oxygen, and lacked proper lighting, gauges and other safety equipment. In the later complaint that asserted the dual capacity doctrine, the plaintiffs alleged that the defendants, their agents, servants or employees acted outside the scope of their business as retailers of fuel oils, in that they negligently designed, created and constructed an underground storage area without proper ventilation, adequate warnings or adequate gauges. The actionable occurrence in the original complaint is an allegedly negligent act in supervising employees while the actionable occurrence in the dual capacity counts of the later complaints is allegedly negligent design and construction of the underground storage area. These complaints involve two different sets of circumstances and depend on different facts to prove or disprove the allegations of a different basis of liability. The fact that the same defendant is accused of negligence in each complaint and the same injury resulted, i.e., the death of three employees by asphyxiation, does not make any and all bases of liability relate back to an original claim of negligence. The defendants did not have fair notice of the claim of negligent construction and design of the underground storage area when the original complaint merely alleged that Norbert Mitchell, Jr., was negligent in ordering the employees to enter the area. See *Giglio* v. *Connecticut Light & Power Co.*, supra. The evidence concerning whether the defendant Mitchell was negligent when he sent three employees into a dan-

gerous area is not necessarily relevant to evidence concerning who designed and constructed the underground area.

This court has faced claims that certain new amendments alleged new causes of action with varying outcomes. In *Giglio* v. *Connecticut Light & Power Co.,* supra, we held that adding a claim that the defendant had permitted certain defects to remain in a furnace system to a strict liability claim did not state a new cause of action. The gravamen of the cause of action was a defective furnace and the defendant was not prejudiced by the amended complaint. In *Baker* v. *Baker,* supra, 486, it was held that an amended prayer for relief asking for a divorce rather than a legal separation did not change the factual bases or series of transactions upon which the complaint was based. In contrast, we held in *Keenan* v. *Yale New Haven Hospital,* supra, 286, that a complaint alleging assault and battery based on a lack of informed consent did not relate back to a complaint that alleged medical malpractice. Likewise, in *Gallo* v. *G. Fox & Co.,* supra, 332, an amendment alleging a fall due to a foreign substance on the floor did not relate back to the original complaint alleging a fall due to a defective escalator. In *Gallo,* the defendant, the plaintiff and the accident itself (falling down) were identical in each complaint but the facts surrounding the negligent acts were different. A defective escalator and a floor made dangerous by foreign substances do not arise out of the same negligent acts. This case is similar to *Gallo* in that the defendant (Norbert Mitchell, Jr.), the plaintiffs' decedents (the three employees) and the accident itself (death by asphyxiation in an underground area) are identical in each of the different counts. It is the acts of negligence that are different. An employer's claimed negligence in sending his employees into a facility that he allegedly knows is dangerous is not the same negligence as that

of a person who negligently designs and constructs a dangerous facility. See also *Patterson* v. *Szabo Food Service of New York, Inc.,* 14 Conn. App. 178, 183, 540 A.2d 99 (1988) (fall due to the installation of a slippery floor is separate cause of action from a fall due to a floor made slippery by spilled food).

We conclude that the amended complaint of January 20, 1986, which first alleged the dual capacity theory, stated a new cause of action and therefore was barred by the statute of limitations. In view of our conclusion that the amended complaint stated a new cause of action, we do not reach the issue of whether, under the circumstances of this case, the dual capacity doctrine would permit a cause of action by the plaintiffs against the defendants.

The trial courts properly granted the defendants' motions for summary judgment.

There is no error.

In this opinion the other justices concurred.