[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case the plaintiff has alleged in her original complaint and an amended complaint dated April 8, 1998, that on July 6, 1998 she "was caused to slip and fall on a raised portion of the floor" while shopping at the Crystal Mall. The plaintiff has sued the owners and operators of the mall for her injuries. She has also sued All-Pro Electric, Inc. which was "contracted by the defendant, Crystal Mall, to perform electrical services" in the Mall. In paragraph 8 of the first count, the plaintiff alleges the defendant, Bowdoin Construction Company, "was contracted by the Crystal Mall to serve as a general contractor for renovations which were to be performed" at the mall. An amended complaint filed July 8, 1998 repeats the foregoing allegations but brings in a new defendant, Tiede Zoeller, Inc. It is alleged in the July amended complaint that Tiede Zoeller, Inc. was a subcontractor hired by the general contractor Bowdoin to perform renovations of the tile work on the floors of the mall.
All-Pro Electric, Inc., Tiede Zoeller, Inc., Crystal Mall Associates Limited Partnership and Bowdoin Construction CT Page 3069 corporation have now filed motions for summary judgment. The motions raise the same legal issue and present their position in the same way, citing the same cases.
The standards to be applied in summary judgment cases are well-known
If there is a genuine issue of fact that court cannot decide it. Here, decision on these motions does not turn on a disputed issue of material fact.
The defendants base their motion on the fact that at her deposition of October 29, 1998, the plaintiff states that she in fact tripped over a piece of piping protruding from the floor. This, the defendants say, cannot be characterized as "a raised portion of the floor." All-Pro, Inc., in its brief argues, at page 2, "there is no dispute that the plaintiffs injuries were not caused by a rise in the floor. The complaint alleges facts concerning the cause of the plaintiffs injury which cannot be proven." The brief goes on to say at page 4, "moreover, the allegation that the plaintiff tripped on piping could not presently be raised because it would be precluded by the statute of limitations. The alleged incident occurred in July, 1996. No amendment would now be permitted. The applicable statute of limitations is two years. C.G.S. § 52-584."
The court will now try to analyze the contentions of the parties. A good place to begin is the language in Salem Park,Inc. v. Salem, 149 Conn. 141, 144 91961) "Rules of pleading are not made for the purpose of tripping up the unknowing or unwary. They are designed to clarify and fix the issues and to confine the judicial inquiry necessary to decide the issues within reasonable and relevant limits." It is interesting to note that all the defendants conclude their briefs by arguing that as in the case of Gallo v. G. Fox, 148 Conn. 327, 331 (1961), no amendment of the pleadings to specify that the plaintiff tripped on piping protruding from the floor would now be allowed. In fact, Gallo turned on the propriety of the trial court's refusal to, in effect, permit an amended complaint.
In a situation such as this, it is appropriate to analyze the problem from the perspective of whether, in fact, an amendment to these pleadings would be allowed under the so-called relation back doctrine. In other words, if an amendment were to be permitted because the court concluded factual allegations CT Page 3070 concerning piping protruding from the floor related back to the allegations of the original complaint, that same court would permit such evidence to be introduced at trial even without an amendment having been filed. Why? It all comes down to fair notice and a trial court has the power to permit and even order pleadings to be amended presumably even at trial cf. Crowell v.Middletown Savings Bank, 122 Conn. 362, 370 (1937). A federal court said the following many years ago. "Where evidence is objected to at the trial because not within the issues made by the pleading, amendments generally are allowed with great liberty." Connoy v. Baltimore Ohio R. Co., 95 F. Sup. 846, 849
(W. D. Penn., 1951). Our practice is not any less liberal.
On the question as to whether or not an amendment would be allowed to the pleadings, our relation back rule "is akin to rule 15(c) of the Federal Rules of Civil Procedure," Giglio v. ConnLight Power Co., 180 Conn. 230, 239 (1980); Sharp v. Mitchell,209 Conn. 59, 72 (1988). The federal courts have given a liberal reading to Rule 15(c). As noted, the issue is one a fair notice. In Federal Practice Procedure, Wright, Miller, Kane, Vol. 6A § 1497 at page 85, it says:
 "Because the rationale of the relation back rule is-to ameliorate the effect of the statute of limitations, rather than to promote the joinder of claims and parties, the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test; although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading."
Along these lines, the court in Barthel v. Stamm,145 F.2d 487, 491 (CA 5, 1944) said:
 "Limitation is suspended by the filing of a suit because the suit warns the defendant to collect and preserve his (sic) evidence in reference to it. When suit is filed in a Federal Court under the rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of action or the relief prayed for or the law relied on will not be confined to the first statements."
Also see Campbell v. A.C. Petersen Farms, Inc., 69 FRD 457,461-62 (D. Conn. 1975). CT Page 3071
As Wright says then at § 1497, page 93, the appropriate approach in these cases "is to determine whether the adverse party ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction or occurrence set forth in the original pleading might be called into question."
Cases where amendment is not allowed fall into a pattern; the leading ones are Gallo v. G. Fox, supra, Sharp v. Mitchell, supra, and Paterson v. Szabo Food Service of New York,14 Conn. App. 178 (1988).
In Gallo v. G. Fox, the plaintiff claimed she was injured when the escalator she was riding on suddenly stopped and started and jerked backward and forward. This caused her to fall. The obvious claim was of operational malfunction. The plaintiff unsuccessfully tried to submit an alternate complaint stating she slipped on sticky pieces of candy on the store premises. Obviously these are totally unrelated claims requiring different types of witnesses and it is not clear weather the location of the injury in the store changed from one location to another in the proposed amendment. The mechanism of injury is different — falling due to the malfunctioning of a piece of machinery as opposed to tripping on an object. In Sharp v. Mitchell, supra, the court held it would be inappropriate to permit the complaint to be amended on a relation back theory. The original complaint was based on an allegation of negligent supervision; men Were sent into an underground storage area which lacked proper ventilation, contained fumes, poor lighting and didn't have safety equipment. The amended complaint sought to allege negligent design and construction of the underground storage area. The court held that "the defendants did not have fair notice of the claim of negligent construction and design. Id., page 73. That was so because, as noted in Gurliacci, at218 Conn. p. 549, in commenting on Sham v. Mitchell, "the change of the negligence action from one of negligent supervision to one of negligent construction was dramatic because the defendant would have been required to gather different facts, evidence and witnesses to defend the amended claim." As the Sharp court itself noted "the fact that the same defendant was accused of negligence in each complaint and the same injury resulted . . . does not make any and all bases of liability relate back to an original claim of negligence." 209 Conn. at page 73. Also, see PattersonCT Page 3072v. Szabo Food Services, supra (amendment not allowed, original complaint alleged fall due to greasy substance left on floor, amendments alleged material out of which floor constructed had too slippery a surface). Here, there is no reasonable way to interpret the allegations of the original and amended complaints as anything more or less than that this lady tripped over something that made the floor uneven. If, at trial, under the present complaint evidence were to be allowed in that the plaintiff tripped over piping embedded in the floor or a new amendment were to be filed explicitly alluding to that, this would not be analogous, for example, to allowing evidence of design defect or permitting a claim that the floor was composed of material which made it slippery. Such allegations would change the nature of the case.
The paragraph of the amended complaint where the plaintiff alleges she fell over "raised flooring" cannot be read in isolation. The amended complaint also alleges that the location of the fall was a construction site area. The defendant, Bowdoin, was the general contractor for renovations to be performed at the mall (¶ 8 of the Amended Complaint). The complaint goes on to say that the raised portion of the floor was allowed "to exist without placing construction cones" to warn the public (¶ 11). The defendant, All-Pro, is said to have failed to inspect the floor "to discover the dangerous condition" i.e. the raised floor. It is abundantly clear that there is no claim made that the material out of which the floor was made was too slippery; neither could it be inferred from the complaint that there was a claim of design defect. The complaint, reasonably read, alleges that the plaintiff tripped over something, inaptly called a "raised floor", but over something, however, which ought not to have been there and was not there as part of a planned permanent feature of the floor.
The defendants, by their ownership and management interest, or by the nature of the work some of them were hired to do, would have had notice by this complaint of the very area were they arranged for work to be done or agreed to do work and, therefore, of the flooring conditions that created the possibility of injury. In a word the defendants knew or should have known that this lady was alleging she fell on a defective floor surface that was not even due to renovation work and the absence of the even floor and some kind of protrusion on it was the cause of her fall. CT Page 3073
An interesting comment in Federal Practice and Procedure, supra, should be noted in this regard. There at § 1497 pp. 92-93, it is said that certain federal courts have taken a broad view regarding permitting amendments "and have held that it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings, a position that seems sound since it is unwise to place undue emphasis on the particular way in which notice is received," see also, language Woods Exploration v. Production Co., Inc., et al,438 F.2d 1286, 1299 (CAS, 1971).
Beyond that, as indicated, it is apparent that a design defect or floor composition allegation was not being made. Given that, and their control over the area where and when the fall occurred, the defendants also had the ability to explore the defect suggested by the term "raised floor" through requests to revise interrogatories and dispositions. Under such circumstances, Moore's comment on Rule 15(r) and amendments are to the point: "Amendments that amplify or restate the original pleading or set forth facts with greater specificity should relate back." Moore'sFederal Practice, Vol. 3, § 15.19(2), pp. 15-82, cf. In reChaus Securities Litigation, 801 F. Sup. 1257, 1264 (S.D. N.Y. 1992).
Perhaps even more to the point, the third party pleadings and apportionment actions filed by these defendants both before and after the limitations period had expired and before the plaintiffs deposition testimony, indicate they were well-aware that although the "raised floor" language was used, the claim here was not based on defective design, for example, or slippery composition of the floor surface, but on the existence of a protrusion in the floor.
All-pro's third party complaint against Bowdoin talks about the latter's agreement to renovate an area of the mall where the plaintiff fell; if that area was in a dangerous and defective condition it was Bowdoin who was responsible. See Third Party Complaint of 3/31/98 filed by All-Pro. Bowdoin Construction Corp. filed a cross-complaint against All-Pro on July 7, 1998 in which in ¶ 7, it is asserted any injury to the plaintiff "as a result of her fall over the raised electrical outlet" in the mall floor was caused by All-Pro's negligence. Crystal Mall filed an apportionment complaint against Tiede Zoeller, Inc. claiming that company was hired to do tile work on the floor as part of mall renovations and the dangerous and defective condition of the CT Page 3074 raised portion of the floor was Tiede Zoeller's fault.
All-Pro filed a cross-complaint against Crystal Mall alleging the fall was due to the fact that it maintained the construction and renovation site negligently (filed 7/30/98).
After Tiede Zoeller was brought in as a defendant, it filed, on August 20, 1998, a cross-complaint against Crystal Mall alleging Crystal Mall failed to safely move and hide electrical wires and outlets; in another count it made the same allegation against the defendants Bowdoin Corporation and All-Pro. Bowdoin Corp and All-Pro duly entered denials to these Tiede Zoeller allegations. The court could go on but life is, after all, short and the point is, especially as to the allegations regarding raised electrical outlets, that these pleadings were filed before the plaintiffs deposition. In fact, armed apparently with information already garnered from the pleadings a defense lawyer at the deposition asked whether the object tripped over looked like an electrical outlet, trying to elicit from the plaintiff that it did not. The plaintiff was unsure.
The point of this discussion is that it appears from the foregoing that these defendants knew themselves through their own investigation or the allegations of the complaint itself that this case was a typical slip and fall claim based on an allegation that this lady tripped on something in the floor such as a protrusion that made it uneven. There was no claim of design defects for example. The requirements of notice have been met. In light of that, the court will not grant any of the motions for summary judgment. The defendants had adequate notice of the nature of the claim and liberal discovery rules gave them the opportunity to develop their defense. The court would, in fact, grant any motion to amend making the complaint more specific just as it would under all the circumstances, have allowed this evidence to be introduced at the time of trial subject to an amendment of the pleadings.
Corradino, J.