[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON OBJECTION TO REOUEST FOR LEAVE TO AMEND
By Request For Leave To Amend Complaint, dated May 17, 2000 (the "Request"), plaintiffs sought leave to amend their original Complaint, dated February 24, 1997, with an accompanying, proposed Second Amended Complaint. By Objection To Request for Leave to Amend, dated May 23, 2000 (the "Objection"), defendant opposed the Request, and submitted a Memorandum in support of her position ("Deft. Memo."). Oral argument on the Objection was heard on June 21, 2000; subsequently, the parties submitted additional material for the court's consideration. For the reasons stated below, the objection is overruled in part and sustained in part.
I. Procedural Background
The Complaint alleged that defendant owned a single family residence located in Deep River, Connecticut (the "premises"). Count One, par. 1. Plaintiffs asserted that, in the process of offering the premises for CT Page 8036 sale, defendant signed a disclosure report, dated January 24, 1996, making certain express representations as to its condition. Id., pars. 3-4. Plaintiffs further alleged that, in February. 1996, in reliance on the disclosure report, they entered into a contract with the defendant wherein they agreed to buy the premises. Id., par. 5. Plaintiffs claimed that defendant knew, when she signed the disclosure report, that "one or more of the subject representations were false." Id., par. 6. Various defective conditions were alleged. Id. Plaintiffs asserted that they did not learn of these claimed misrepresentations until after the premises were purchased in July, 1996. Id., par. 9. They claimed damages as a result.
These allegations were included in counts One and Two, which were dominated "Fraud" and "Theft," respectively. In Count Four, plaintiffs also alleged breach of contract, claiming that, by Addendum, dated February 28, 1996, defendant agreed to make certain repairs to the house, but failed to do, also causing damages.
Defendant filed her Answer to the Complaint on December 11, 1997. On April 1, 1998, she filed a Motion to Amend with three special defenses. This motion did not appear on the Short Calendar, and the parties did not bring this to the court's attention. After hearing oral argument on May 17, 2000, the Motion to Amend was granted.
Defendant's motion for partial summary judgment was filed on April 28, 1998. By Memorandum of Decision, dated January 26, 2000, the court (Rogers, J.) granted defendant's motion for partial summary judgment as to Counts Three (Breach of Covenant) and Count Six (Breach of Promise). Counts Five (Breach of Statutory Duty) and Seven (as to another defendant) were withdrawn.
Plaintiffs filed a previous Request For Leave To Amend Complaint, dated April 6, 2000. After hearing oral argument, the court sustained defendant's objection to that request by Memorandum of Decision On Objection To Request For Leave To Amend, dated April 26, 2000 (the "April 26, 2000 Ruling").[1]
II. Standard of Review
Connecticut "generally follows a liberal policy in allowing amendments to complaints." Web Press Services Corp. v. New London Motors, Inc.,203 Conn. 342, 360 (1987). However, a party's freedom to add new allegations to a complaint is limited by the relation back doctrine, which
 provides that an amendment relates back when the CT Page 8037 original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving "the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims . . .
Barrett v. Danbury Hospital, 232 Conn. 242, 264 (1995) (quoting Gurliacciv. Mayer, 218 Conn. 531, 548 (1991)). "Amendments should be made seasonably." (citations and internal quotation marks omitted.)Connecticut National Bank v. Voog, 233 Conn. 352, 364 (1995). Whether or not to permit an amendment lies within the trial court's discretion, which may be exercised to restrain amendments "so far as necessary to prevent unreasonable delay of the trial." Id. Other factors to be considered are the length of delay, fairness to the opposing parties, and the negligence, if any, of the party offering the amendment. Id.
III. Discussion
Plaintiffs' Request outlines the changes in their Second Amended Complaint. They contend that their new pleading is an amplification of their previously pleaded claims, not involving a new cause of action. References in the previous Amended Complaint, to water damage, water drainage, and installation failure were deleted from paragraphs 4 and 5 of Count One in the Second Amended Complaint. Request, at 2-3. In the Second Amended Complaint, as in the previously proposed amendment, plaintiffs pleaded that there was buckling in the parquet floors in all four of the premises' bedrooms and that there were loosened and missing tiles in the "great room." Id., Count One, par. 5.
In support of the Request, plaintiffs incorporated by reference their previous Motion for Clarification, dated April 28, 2000. The Motion for Clarification noted that when plaintiff Jeff Mehler testified at his deposition, he claimed and provided estimates for repair of all four bedroom floors, including a three page work order from Mr. Richard Beyer identifying the cost of the flooring in the four bedrooms. Motion, at 1. With that Motion, plaintiffs submitted copies of their Preliminary Compliance With Section 13-4 (4) Disclosure of Experts, dated March 2, 1999 ("Disclosure"); and defendant's Notice of Deposition concerning Mr. Richard Beyer of Pataya Construction, dated March 9, 2000 ("Notice of Deposition"). In the Disclosure, it was noted that Mr. Beyer would provide opinion to the effect that all of the parquet flooring at the premises required replacement. Id., par. 1. In the Notice of Deposition, defendant sought from Mr. Beyer copies of documents relating to "[w]ater damage to the parquet flooring" at the premises. Id., Schedule A, par. 10. CT Page 8038
Thus, plaintiffs claimed that, well in advance of the offering the Second Amended Complaint, defendant was aware that plaintiffs' claims extended beyond damages sustained in connection with buckling only "in the parquet floors of the left side bedroom." as previously pleaded in the original Complaint in 1997. Complaint, Count One, par. 5B. As previously noted also in the court's April 26, 2000 Ruling, at 5, n. 1, the Complaint discussed buckling of the floors throughout the house in Counts Five and Six, which were withdrawn and removed by summary judgment, respectively.
In addition, at oral argument, plaintiffs' counsel also referred to excerpts of the deposition of Mr. Beyer, dated March 17, 2000, which were submitted at a prejudgment remedy hearing before the court (O'Keefe, J.) on May 1, 2000 (the "PR hearing"). These were subsequently provided to this court as well. Several of these references reflect discussion of buckling of the floors "in all the rooms," other than the great room. Id., at 21, 11. 5-21; 25, 11.5-9; 27, 11.4-7; 30, 11.1-4; 31, 11.6-18; 32, 11.6-21; 33, 11.4-7; 76, 11.7-9 (parquet floors replaced in all four bedrooms). Loosened and missing tiles in the great room were also discussed in Mr. Beyer's deposition. Id. at 98, 11.1-25.
Defendant's Objection asserts that the Second Amended Complaint should be barred because (1) it violates the statute of limitations; (2) the court's April 26, 2000 Ruling rejected the same language and is the law of the case; (3) the proceedings will be delayed and defendant will be unfairly prejudiced; (4) the failure to previously raise new issues is due to plaintiffs' own fault; and (5) the amendment contains unnecessary, impertinent and improper allegations.
In support of her Objection, defendant submitted portions of the PR hearing transcript and portions of the deposition of Mr. Beyer. At oral argument on June 21, 2000, defendant's counsel also made reference to portions of the deposition of plaintiff Mary Russell, dated April 21, 1998. Subsequently, the transcript of her deposition was submitted to the court as well.
As to Mr. Beyer's deposition, Deft. Memo. at 4 of 9 notes that it was taken after the ruling on the summary judgment motion. Defendant also refers the court to references by Mr. Beyer to the flooring. Id. In Ms. Russell's 1998 testimony, she asserted that she was claiming damages for the removal of the parquet floors in all four of the bedrooms. Transcript, at 35-39. In particular, reference was made to a report prepared by Mr. Beyer, which was identified at Ms. Russell's deposition (transcript, at 34-35) as Exhibit 7, which was received prior to the closing, and which provided an estimate for replacing the parquet CT Page 8039 flooring.
The court will address defendant's arguments in the order in which they were presented.
A. The Statute of Limitations
As the court's April 26, 2000 Ruling noted, at 4,
 Where a proposed amended complaint proposes a new cause of action which is barred by the statute of limitations, it cannot relate back to the date of the original complaint. Sharp v. Mitchell, 209 Conn. 59, 75 (1988). Here, where misrepresentation and theft are alleged, the limitation period for each is three years. Conn. Gen. Stat. § 52-577; Krondes v. Norwalk Savings Society, 53 Conn. App. 102, 113
(1999). "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . ." (citation and internal quotation marks omitted) Barrett v. Danbury Hospital, 232 Conn. 242, 262 (1995).
Defendant claims that the original Complaint's references to the "other floors" in Counts Five and Six reflected an earlier determination by plaintiffs to "allege a different set of damages flowing from different causes." Deft. Memo. at 3 of 9. Accordingly, she asserts that since the amendments "deal with a different area of the house and contemplate a different set of damages," id. at 5 of 9, a new cause of action is presented, beyond the statute of limitations, of which defendant did not have fair notice. Id. at 6 of 9.
Defendant did have notice that plaintiffs were pursuing damages to other floors in the house. beyond the left side bedroom, which is discussed in paragraph 5B of Count One in the original Complaint. Count Five of the Complaint referred, in paragraph 6A, to "buckling and lifting of the parquet floors throughout the subject house;" and Count Six, in paragraph 7A, referred to the same. In addition, Ms. Russell's April, 1998 deposition testimony discussed these claims and defendant was provided then with a copy of Mr. Beyer's estimates for such repairs. Defendant had fair notice, in the Complaint and through discovery, in advance of the expiration of the three year statutes of limitations, and well before the issuance of the summary judgment decision, that additional damage claims, beyond the left side bedroom, were at issue. CT Page 8040
In so finding, the court is guided by the recent decisions of our appellate courts which reject a formalistic approach to the interpretation of pleadings. "The modern trend is to read pleadings broadly and realistically, rather than narrowly and technically." (citations omitted.)Grigerik v. Sharpe, 56 Conn. App. 314, 318 (2000);Grimes v. Housing Authority of The City of New Haven, 242 Conn. 236, 249
(1997).
In addition, in an analogous situation, our Appellate Court has found, in a case concerning alleged construction defects in a new house, that an amendment, made during trial, to add claims of a very different set of defects," based on a pretrial memorandum filed about six weeks earlier, was permissible. Barnicoat v. Edwards, 1 Conn. App. 652, 653 (1984). Initially, plaintiffs there alleged eleven defects. On the second day of trial, the different set of claimed defects was allowed. Id. The Appellate Court found that the amended list "did not constitute a new cause of action. Both the original list of defects and the amended list grew out of claimed defects in the construction of a new house." Id. at 653-654. Amplification or expansion of the previously pleaded cause of action was permitted, as the "identity of the cause of action remained the same. . . ." Id. at 654.
In its April 26, 2000 Ruling, at 6-7, the court cited Sharp v.Mitchell, supra, 209 Conn. 73 ("Sharp"), and Patterson v. Szabo FoodService of New York, Inc., 14 Conn. App. 178, 183, cert. denied,208 Conn. 807 (1988) ("Patterson") in support of its determination that the first Amended Complaint presented a new cause of action, beyond the statute of limitations, which was barred. The key difference in the now-proposed Second Amended Complaint is that it omits charging defendant with a new claimed misrepresentation. In the Amended Complaint, plaintiffs attempted, for the first time, to claim damages based on a January, 1996 representation by defendant concerning "water drainage problems." Amended Complaint, Count One, par. 4D. In that pleading, damages to "all four of her bedrooms" were related, at least in part, to "drainage problems." Id., par SC. The court found that the addition of "water drainage problems" and drainage-related conditions were not mere amplifications, but represented substantive changes about which the defendant had not received notice . . . April 26, 2000 Ruling at 5-6.
In contrast, the representation concerning drainage problems is omitted from the Second Amended Complaint, as is reference to damage from drainage-related problems. In response to the Second Amended Complaint, defendant would not be required to defend a stale claim based on a new claimed misrepresentation. Rather, she would be faced with an amplified claim for damages based on two of the original claimed misrepresentations which were outlined in the original Complaint, Count One, paragraphs 4A CT Page 8041 and 4B, "no floor problems" and "no termite/insect/pest infestation." Second Amended Complaint, Count One, pars. 4A and 4B. In addition, as noted, in advance of the expiration of the limitations period, discovery previously revealed that damages were being claimed concerning floors in other rooms besides the "left side bedroom."
Thus, the Second Amended Complaint presents a situation differing from those in Sharp and Patterson. The causes of action pleaded in the amendments there involved "two different sets of circumstances and depend on different facts to prove or disprove the allegations of a different basis of liability." Sharp, 209 Conn. at 73. Here, defendant was put on notice of the claims of liability within the limitations period.
B. Law of The Case
Defendant claims that "[v]irtually all of the language of the now proposed amendment are verbatim renditions of portions of the prior request to amend." Deft. Memo. at 7 of 9. If a matter previously has been ruled upon by the court interlocutorily, it may be treated as "the law of the case." McCarthy v. McCarthy, 55 Conn. App. 326, 332 (1999), cert. denied, 252 Conn. 923 (2000) ("McCarthy"). Defendant asserts that since the court allowed no part of the previously proposed amendment, and much of what is offered now is the same, it should remain "out of the case." Deft. Memo. at 7 of 9.
The doctrine of law of the case is a "flexible" one, usually involving one judge determining whether or not to follow the decision of another.McCarthy, 55 Conn. App. at 332. A judge is not bound to follow a decision made at an earlier stage of the proceedings, "and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." (citations omitted.) Id.
Here, of course, defendant asks this court to apply the doctrine to its own earlier decision. The doctrine, however, is not applicable here, since the "same point" is not raised by the proposed, Second Amended Complaint. As outlined above, the new amendments, while repeating much of the previously proposed language, differ markedly from those advanced previously because a substantial change is presented: the previously proposed, new claim of misrepresentation is dropped. The amplified damage claims now relate to claimed misrepresentations which were pleaded in the original Complaint. The law of the case does not apply to a "new or overriding circumstance," McCarthy, 55 Conn. App. 332, such as is present here.
C. Claimed Unfairness To The Defendant
CT Page 8042
In support of this portion of their Objection, Deft. Memo., at 7 of 9-8
of 9, asserts that allowing the amendments would be unfair to the defendant since depositions of the plaintiffs, Mr. Beyer, and herself already have occurred and "these new articles of possible damage were not alleged or considered or any possible expert testimony explored." She claims also that by the time Mr. Beyer was deposed, the "claims for other rooms were out of the case, as the Plaintiffs acknowledge." Id. at 7 of 9[2] She asserts that the proceedings will be delayed and substantial expense incurred to "chase down these new elements."
As our Appellate Court recently reiterated,
 "In exercising its discretion with reference to a motion for leave to amend, a court should ordinarily be guided by its determination of the question whether the greater injustice will be done to the mover by denying him his day in court on the subject matter of the proposed amendment, or to his adversary by granting the motion, with the resultantdelay." DuBose v. Carabetta, 161 Conn. 254, 263, 287 A.2d 357 (1971).
Grigerik v. Sharpe, supra, 56 Conn. App. 320. "It is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." Snow v. Calise,174 Conn. 567, 574 (1978).
While an amendment will often cause prejudice to the other party, the Appellate Court, in Grigerik, determined that since the defendants there "were not unfairly prejudiced," the trial court had not abused its discretion in permitting the amendment. (emphasis added) Id.,56 Conn. App. 320. Previously, our Supreme Court also has stated that "unfairly prejudiced" is the proper standard. Willow Springs Condo. Assn., Inc. v. 7th BRT Dev. Corp., 245 Conn. 1, 63 (1998).
Here, defendant was put on notice of the claims as to other bedroom floors early on in the case, in the original Complaint, and through Ms. Russell's April, 1998 deposition, which included identification of Mr. Beyer's estimate for replacement of the floors. Accordingly, Mr. Beyer's deposition could have been taken much earlier in the proceedings, well in advance of the court's summary judgment ruling.
As noted above, in connection with the pending Objection, the court has had the opportunity to review portions of Ms. Russell's deposition (with exhibits) and Mr. Beyer's deposition relating "to damages to the other floors. Defendant has not specified what else would have to be explored CT Page 8043 from these witnesses (or from Mr. Mehler or defendant) in the event that re-deposing of them was sought. Also, Ms. Russell's April, 1998 deposition, at 35-36, revealed that the bedroom floors had been removed and repaired after the closing. Thus, any expert whom defendant had retained in 1998 after that deposition, or who would be retained now, would not have been able then, or will not be able now, to inspect the bedroom floors as they were at the time of the closing. Defendant, as a matter of strategy, may choose to explore hiring her own expert, as she could have when the case was first brought. That such an expense may be incurred is not evidence of prejudice to her, let alone unfair prejudice.
Clearly, plaintiffs could have sought to amend their pleadings much earlier. These proceedings already have been delayed, as noted above, due to the fact that the pleadings were not closed after the motion to amend, submitted by defendant, concerning the special defenses, was filed in 1998.
Under the circumstances at issue, as discussed, the court concludes that the greater injustice would be done to the plaintiffs by denying them their "day in court" as to the amendments, than to defendant, by permitting the amendments, with the resultant delay. Since the previously scheduled trial was postponed, defendant should be afforded appropriate time to retain an expert on the subject of the amendments, if she deems it necessary. Likewise, if defendant believes re-deposition of Mr. Beyer or another witness is necessary, she may seek an order, pursuant to Practice Book § 10-60(3)(b), requiring plaintiffs, due to their delay in seeking leave to amend, to pay the costs, including attorneys fees, of such a re-deposition or re-depositions.
D. Evidentiary Material
Finally, pursuant to Practice Book § 10-35, defendant objects to that portion of the amendments which alleges the amount of time the premises were on the market. Paragraph 2 of Count One of the Second Amended Complaint alleges that defendant "unsuccessfully attempted to sell the subject parcel for approximately two and one half years." Deft. Memo, at 8 of 9, urges that this paragraph is inappropriate since it is immaterial or constitutes evidentiary material.
At oral argument, plaintiffs'counsel acknowledged that this paragraph was evidentiary. While he claimed it was probative, he stated it was not an essential element of plaintiffs' fraud claim. and that it could be removed. Although normally such an issue is raised by request to revise, in view of the age of this case, the advanced stage of the pleadings, and plaintiffs' stated willingness to remove the paragraph, which is CT Page 8044 evidentiary in nature, the objection to paragraph 2 of Count One is sustained.
IV. CONCLUSION
For the foregoing reasons, defendant's Objection To Request for Leave to Amend, dated May 23, 2000, is overruled, except as to paragraph 2 of Count One of the Second Amended Complaint. As to that paragraph, the Objection is sustained. Plaintiffs shall file an amended complaint conforming to this Memorandum of Decision within fifteen days of the date of its filing.
It is so ordered.
BY THE COURT
 ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT